785 F.2d 963
 54 USLW 2524, Medicare&Medicaid Gu 35,333
 ALACARE, INC.-NORTH, an Alabama corporation, Plaintiff-Appellant,
v.
Faye S. BAGGIANO, in her official capacity as Commissioner
of the Alabama Medicaid Agency, Defendant-Appellee,
and
Alabama Medicaid Agency, Defendant.
 No. 85-7420.
 United States Court of Appeals,
Eleventh Circuit.
 April 2, 1986.
 
 Jonathan H. Waller, Haskell, Slaughter, Young & Lewis, B. Glenn Murdock, Birmingham, Ala., for plaintiff-appellant.
 James H. McLemore, Henry D. Barnett, Jr., Montgomery, Ala., for defendant-appellee.
 Appeal from the United States District Court for the Middle District of Alabama
 Before JOHNSON and HATCHETT, Circuit Judges, and MURPHY*, District Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 In Patsy v. Board of Regents of the State of Florida, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), the Supreme Court determined that there is no general exhaustion of remedies requirement for plaintiffs pursuing claims under 42 U.S.C.A. Sec. 1983 (1985). This Circuit has not previously attempted to mark the precise contours of that holding. We hold today that Patsy does not preclude the finding of implicit exhaustion requirements in congressional enactments. But we also hold that no such requirement exists under the language of the Medicaid Act, 42 U.S.C.A. Sec. 1396, et seq. (1985). Accordingly, we AFFIRM in part and REVERSE AND REMAND in part the holding of the trial court below.
 
 I.
 
 2
 This is an action brought under Section 1983 by a provider of health care services under the Medicaid Act. Medicaid is a cooperative endeavor of the state and federal governments. Each state is required, consistent with basic federal guidelines, to create its own administrative rules and regulations for running the program in that state through a specially created state agency. Each state must also set up an administrative review process, but is not required to provide for state judicial review.
 
 
 3
 Appellant Alacare Inc.-North ["Alacare"] operates the Adams Nursing Home in Alexander City, Tallapoosa County, Alabama. Prior to 1984 appellant's nursing home was certified under the Medicaid Act as an "intermediate care provider"--a level of care higher than mere room and board, but not as high as that provided by a "skilled care provider." The services provided by the latter are equivalent to those one could receive as a hospital in-patient. Those facilities certified to provide both intermediate and skilled care are called "dual care providers." The financial reimbursement from the federal government through the states is higher for skilled care than for intermediate care.
 
 
 4
 Appellant resolved to secure all necessary certification and licenses in order to operate as a dual care provider. It received the necessary federal and state documents as of February 1, 1984, but the appellee, Faye S. Baggiano, acting in her official capacity as Commissioner of the Alabama Medicaid Agency, refused to issue a dual care provider contract to the appellant for the contract year 1985-86. She based this on the existence of a surplus of skilled care beds in Tallapoosa County. Denial of a contract for good cause is permitted by 42 C.F.R. Sec. 442.12(d) (1984). The United States Department of Health and Human Services reviewed this decision, upon appellant's request, and approved the appellee's determination that Alacare should not be issued a dual care provider contract.
 
 
 5
 Appellant claims that this decision was without good cause, arbitrary, and capricious, in that Alacare has obtained all the necessary federal and state clearances save the contract. It claims that one offered justification--budgetary considerations--is in unlawful noncompliance with federal standards and proscribed by Alabama Nursing Home Ass'n v. Califano, 433 F.Supp. 1325, 1330 (M.D.Ala.1977). Appellant has exhausted all state administrative remedies, and is currently in the process of pursuing its state judicial remedies as provided by Ala.Code Sec. 41-22-20(a) (1975).
 
 
 6
 Concurrent with the pursuit of a state judicial remedy, Alacare filed this action on March 1, 1985, under Section 1983 for wrongful failure and refusal to contract with appellant as a dual care provider. Appellee Baggiano and defendant Alabama Medicaid Agency ["AMA"] filed motions to dismiss alleging, inter alia, failure to exhaust available remedies with the state. The trial court considered the motion to dismiss as a motion for summary judgment and granted that motion on May 3, 1985, due to failure to exhaust state remedies.
 
 
 7
 Alacare filed a motion to reconsider as to Baggiano, but not AMA. This was denied in an order entered June 28, 1985, the trial court finding that Alacare "has failed to show that the exhaustion requirement should be waived in this case." Alacare appeals only as to the summary disposition of its suit against Baggiano.
 
 II.
 
 8
 This case raises two issues: A) whether the trial court properly found an implied requirement in the Medicaid Act to exhaust state remedies before pursuing a Section 1983 action in federal court; and B) if that requirement is proper, whether the trial court erred here in requiring exhaustion of both state administrative and judicial remedies.
 
 A. Exhaustion Requirements:
 
 9
 The appellant argues that the trial court was in error in finding an implied exhaustion requirement for Medicaid actions under Section 1983; this poses a question of law. Neither party contests any factual issues here. Consequently, our review is independent. Cathbake Inv. Co. v. Fisk Electric Co., 700 F.2d 654, 656 (11th Cir.1983).
 
 
 10
 1) Implicit and Explicit Exhaustion Requirements:
 
 
 11
 In Patsy v. Board of Regents of the State of Florida, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), the Supreme Court strongly reaffirmed that there is no general requirement that a plaintiff exhaust any remedy he might have at state law before proceeding into federal court, save where Congress has crafted an exception to that general rule. Id. at 512, 102 S.Ct. at 2565-66. The language of Patsy is, however, somewhat opaque on the question whether this congressionally created exception must be explicitly supplied or may be deemed implicit in the type of administrative machinery Congress constructs.
 
 
 12
 Alacare points to portions of Justice Marshall's Opinion for the Court that note how narrowly and clearly Congress created the only major exception to the no-exhaustion rule.[1] From this appellant argues that Patsy must be read as imposing what Justice Powell called "a flat rule without exception." 457 U.S. at 534 (Powell, J., dissenting). Unless the Congress created a specific, and explicit, exception, appellant argues, a court may not find one.
 
 
 13
 The appellee, and the trial court below, note several passages in Patsy that contradict this. The Supreme Court recognized that "[o]f course, courts play an important role in determining the limits of an exhaustion requirement and may impose such a requirement even where Congress has not expressly so provided." 457 U.S. at 501, 102 S.Ct. at 2560. Patsy's footnote 4 elaborates on this theme:
 
 
 14
 Even where the statutory requirement of exhaustion is not explicit, courts are guided by congressional intent in determining whether application of the doctrine would be consistent with the statutory scheme .... With state administrative remedies, the focus is not so much on the role assigned to the state agency, but the role of the state agency becomes important once a court finds that deferring its exercise of jurisdiction is consistent with statutory intent.
 
 
 15
 457 U.S. at 502 n. 4, 102 S.Ct. at 2560 n. 4. In determining whether putatively implicit exceptions in fact exist, we must look always "to congressional intent; and a court should not defer the exercise of jurisdiction under a federal statute unless it is consistent with that intent." Id. at 501-02, 102 S.Ct. at 2560.
 
 
 16
 Patsy cannot be read quite so broadly as Alacare would like; nor can footnote 4 be applied quite as the trial court would have it. The effect of the former would be to render footnote 4 surplusage; affirming the trial court's holding in toto would place on the courts the burden of making a number of policy choices as to the scope and contours of exceptions for which the Supreme Court felt legislative solutions were preferable. Patsy, 457 U.S. at 513-14, 102 S.Ct. at 2566-67.
 
 
 17
 Adopting a broad reading of Patsy would exacerbate a tension that the Supreme Court created by failing to reconcile that case with Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). The Court in McNary held that, notwithstanding the no-exhaustion principles announced in McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 633 (1963), and its progeny, a Section 1983 action would not lie against a state tax assessor unless plaintiffs had first sought "protection of their federal rights by state remedies...." 454 U.S. at 116, 102 S.Ct. at 186. More important for this case is the language of Justice Brennan, concurring in the judgment for himself and Justices Marshall, Stevens, and O'Connor. Id. at 117, 102 S.Ct. at 186-87. Where the requirement of exhaustion merely defers, rather than displaces, the Section 1983 remedy, there need not be a "clear statement of congressional intent...." Rather, "a somewhat lesser showing is required.... Where the obligation to require exhaustion of administrative remedies may be fairly understood from congressional action, or is in accord with congressional policy, not only is Sec. 1983 no bar, but the federal courts should be alert to further those policies." Id. at 136, 102 S.Ct. at 196 (emphasis supplied). This came in the context of a state tax dispute, an area in which federal courts have long been reticent to intervene, but we find no basis in the language of the various opinions in McNary for limiting that holding to the tax context. Notwithstanding Justice Powell's dissent in Patsy, we are unable to reconcile Patsy and McNary except by holding that Patsy is not a flat statement that no exhaustion can be required except upon explicit congressional provision.[2] To that extent, the trial court in this case was correct.
 
 
 18
 The Supreme Court was not willing to foreclose completely the existence of exceptions by implication. The Court's statement that "Congress has taken the approach of carving out specific exceptions" to the rule does not require holding that courts may never find implied exceptions; it merely suggests that we must be chary of doing so absent compelling evidence to suggest that Congress truly did so intend. The question then becomes whether there is any firm evidence of congressional intent to require exhaustion of state remedies in Medicaid cases.
 
 2) A Medicaid Exception:
 
 19
 Patsy leaves no doubt that the presumption is strongly in favor of no exception. 457 U.S. at 513, 102 S.Ct. at 2566. The more firmly we restrain ourselves, absent a clear cue from Congress, the better. The evidence of a congressional preference for imposing an exhaustion requirement in Medicaid cases is simply inevident, either explicitly or implicitly.
 
 
 20
 A number of courts have been presented with Section 1983 claims under the Medicaid Act. Until recently they uniformly have allowed the plaintiffs to go forward without requiring exhaustion of state remedies. Curtis v. Taylor, 625 F.2d 645, 649 (5th Cir.), modified on other grounds, 648 F.2d 946 (5th Cir.1980); Randall v. Lukhard, 709 F.2d 257, 261 (4th Cir.1983), aff'd and rev'd in part on other grounds, 729 F.2d 966 (4th Cir.) (en banc ), cert. denied, --- U.S. ----, 105 S.Ct. 222, 83 L.Ed.2d 152 (1984); Illinois Hospital Ass'n v. Illinois Dep't of Public Aid, 576 F.Supp. 360, 367 (N.D.Ill.1983); Thomas v. Johnson, 557 F.Supp. 879, 902 (W.D.Tex.1983). The problem is that these courts were not squarely presented with the question whether exhaustion should be required. They simply did not require it.
 
 
 21
 Several district courts have considered the question expressly since the decision in Patsy, and they have split. Those finding that Medicaid does not impose an exhaustion requirement are: In re Greenwald, 48 B.R. 263, 270-71 (S.D.N.Y.1984); and Quakertown Hospital Ass'n v. O'Bannon, 1983 Medicare & Medicaid Guide (CCH) p 33,629 (E.D.Pa.1983). Those reaching contrary results are: Arden House, Inc. v. Heintz, 612 F.Supp. 81, 85 (D.Conn.1985); St. Joseph Hospital v. Electronic Data Systems Corp., 573 F.Supp. 443, 450 (S.D.Tex.1983); and Ryans v. New Jersey Commission for the Blind, 542 F.Supp. 841, 850 (D.N.J.1982).
 
 
 22
 Those courts holding that there is an implicit exhaustion requirement base that conclusion on the fact that the Medicaid statute requires the creation of a state administrative process to review claims. They reasoned that if Congress ordered these avenues set up it must, a priori, have intended that they be used to weed out most of the claims, thereby limiting the burden on the federal court system. On the surface, this is a not unreasonable assumption. But we conclude that it is unavailing for three reasons.
 
 
 23
 First, we must always bear in mind the purpose Congress had in adopting Section 1983: to provide an alternate, supplemental avenue for relief to persons who almost always have an additional available remedy at state law. Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961); Hudson v. Palmer, 468 U.S. 517, ---- n. 9, 104 S.Ct. 3194, 3210 n. 9, 82 L.Ed.2d 393 (1984) (Stevens, J. concurring and dissenting); Patsy v. Florida International Univ., 634 F.2d 900, 916 (5th Cir.1981) (en banc ) (Rubin, J., dissenting), rev'd, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Further, Congress has expressed its desire to maintain "free, unimpeded resort to 1983." Patsy, 457 U.S. at 509, 102 S.Ct. at 2564 (quoting remarks of Rep. Kastenmeier in debate over CRIPA). In almost any case brought under Section 1983 there will be some sort of administrative or judicial avenue of relief at state law--whether compelled by federal statute or simply available under general state court jurisdiction. Thus the mere fact that Congress created parallel and perhaps duplicative avenues for review does not, standing alone, demonstrate an implicit purpose to impose an exhaustion requirement.
 
 
 24
 The second, and clearest, basis for holding that there is no implicit exception for the Medicaid Act is simply to compare it with the Aid to Dependent Children Act, 42 U.S.C.A. Sec. 601 et seq., (1985) ["ADC"], where the Supreme Court has held that Congress did not craft an exhaustion requirement, and with CRIPA, an instance where the Congress specifically did create an exception. The Medicaid Act sets up a dual federal-state program, mandates the creation of a state administrative agency, and provides for "granting an opportunity for a fair hearing before the State agency to any individual whose claim ... is denied or is not acted upon with reasonable promptness...." 42 U.S.C.A. Sec. 1396a(a)(3). ADC is also a program run as a joint federal-state endeavor, also requires that each state set up an administrative agency, and also requires that the agency "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim ... is denied or is not acted upon with reasonable promptness...." 42 U.S.C.A. Sec. 602(a)(4). The similarity in the structure of the two programs is striking; the language providing for administrative review is identical. The Supreme Court has held that there is no exhaustion requirement under ADC. Rosado v. Wyman, 397 U.S. 397, 405-07, 90 S.Ct. 1207, 1214-15, 25 L.Ed.2d 442 (1970) (exhaustion not required, though federal court need not "deprive itself of the benefit of the expertise of the federal agency" if available in the form of amicus brief or published interpretation of rules, etc.).[3]
 
 
 25
 On the other hand, CRIPA does not create a separate administrative agency, but requires that to the extent there exists "a plain, speedy, and effective system for the resolution of grievances ..." it must be resorted to absent certain circumstances. 42 U.S.C.A. Sec. 1997e. Clearly the similarity among the three programs is between Medicaid and ADC. This suggests strongly that the exception that exists for CRIPA, and does not exist for ADC, is not implicit in Medicaid.
 
 
 26
 The third reason we reject the trial court's finding of an exhaustion requirement is based on logic and practicality. If we were to endorse the trial court's reasoning as to Medicaid, we see no principled basis for limiting that holding. The result would be a major, dramatic narrowing of the scope of relief available under Section 1983. If that were the appropriate interpretation to accord the statutory provision of administrative review, we doubt that the Supreme Court in Patsy would have been so forceful in identifying the CRIPA exception as so exceptional. "It is not for us to say whether Congress will or should create a similar scheme for other categories of Sec. 1983 claims or whether Congress will or should adopt an altogether different exhaustion requirement for nonprisoner Sec. 1983 claims." 457 U.S. at 515. Save for cases like McNary, this statement could be read as suggesting that CRIPA is the only exception to the general rule.
 
 
 27
 If the statutes excepted from the no-exhaustion rule were as common as would be required under the trial court's approach, the Supreme Court would have made mention. Yet Patsy and other cases leave no doubt that the CRIPA exception is a rare creature indeed. See, e.g., Lewis v. Hillsborough Transit Authority, 726 F.2d 668, 669 (11th Cir.) (per curiam ) (denying petition for rehearing) (" 'Exhaustion of state judicial or administrative remedies is not a prerequisite to section 1983 actions, except for those cases falling under the narrow exhaustion scheme embodied in [CRIPA]' " (citation omitted) (quoting Daniels v. Williams, 720 F.2d 792, 794 n. 1 (4th Cir.1983), aff'd on other grounds, 748 F.2d 229 (4th Cir.1984) (en banc ), cert. granted, --- U.S. ----, 105 S.Ct. 1168, 84 L.Ed.2d 320 (1985)), cert. denied, --- U.S. ----, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984)); Collins v. King, 743 F.2d 248, 251 (5th Cir.1984); Heath v. Cleary, 708 F.2d 1376, 1379 (9th Cir.1983); Owen v. Kimmel, 693 F.2d 711, 714 (7th Cir.1982). There is no suggestion in any of these cases that provision for administrative review by the state constitutes the implicit creation of an exhaustion requirement.
 
 
 28
 Courts can find implicit requirements of exhaustion of remedies. But implicit does not mean created of whole cloth. There must at least be some clearly evident indication from Congress that that is its intent. We find none here, and accordingly the trial court must be reversed.
 
 B. Exhaustion of Judicial Remedies:
 
 29
 Finally, Alacare argues that even if it is required to exhaust its state administrative remedies, it has already done so. The only thing it has not exhausted is its state judicial remedy. It has an action pending currently in Tallapoosa Circuit Court. The appellant argues that even if there is an implicit congressional intent to require exhaustion of administrative remedies, Congress clearly did not intend to require exhaustion of judicial remedies and thus there can be no implicit requirement that this second layer of relief be pursued. Appellant notes further that the Medicaid Act does not require that a state open its courts to such claims and, since not all states do so, to require exhaustion of judicial remedies imposes an uneven burden on litigants in the various states.
 
 
 30
 The appellee's response is that Alacare should not be heard to complain because it elected to pursue its state judicial remedy and hence should be forced to see it through. Appellee also submits that we should invoke the abstention doctrine as articulated in Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and decline to consider the merits.
 
 
 31
 The short answer to the former argument is to note that the appellant only "elected" to pursue a state court remedy because it constitutes part of the prescribed avenue of relief under the Alabama Medicaid statute. Ala.Code Sec. 41-22-20 (1975). The short answer to the latter argument is to note that Colorado River Water District has been rejected as a basis for abstention under Section 1983 in this Circuit. Forehand v. First Alabama Bank of Dothan, 727 F.2d 1033, 1036 (11th Cir.1984) ("There is no such congressional statement ... that Sec. 1983 plaintiffs should be required to litigate their federal claims in state forums [sic] when actions involving the same transaction are pending in state court. If there is any presumption on this point, it would tend to run in the opposite direction.").
 
 
 32
 More importantly, the Supreme Court and this and other appeals courts have all held that the no-exhaustion rule applies to exhaustion of state administrative and judicial remedies. See e.g., Steffel v. Thompson, 415 U.S. 452, 472, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974) ("When federal claims are premised on 42 U.S.C. Sec. 1983 ... we have not required exhaustion of state judicial or administrative remedies...."); McNeese v. Board of Education, 373 U.S. 668, 671-72, 83 S.Ct. 1433, 1435-36, 10 L.Ed.2d 622 (1963) (same); Gilmere v. City of Atlanta, 774 F.2d 1495, 1499 (11th Cir.1985) (en banc ) ("[T]he right to bring an action under section 1983 need not depend on the exhaustion of state judicial or administrative procedures.... [A]ccess to federal court under section 1983 is not in general predicated on actual proof of a failure of the state adjudicatory system."); Lewis v. Hillsborough Transit Authority, 726 F.2d at 669 (no exhaustion requirement except as provided in CRIPA); McKinnis v. Mosely, 693 F.2d 1054, 1056 (11th Cir.1982) (per curiam ) (same); Loudermill v. Cleveland Board of Education, 721 F.2d 550, 555 (6th Cir.1983) (McNeese made clear there is no judicial exhaustion requirement, and Patsy "left little room" for one.),[4] aff'd on other grounds, --- U.S. ----, 105 S.Ct. 1487, 84 L.Ed.2d 494; Daniels v. Williams, 720 F.2d at 794 n. 1 (same). The courts have not drawn a distinction between requirements of exhaustion of administrative versus judicial remedies. Accordingly, this question turns on the result this Court reaches in Section A, supra; hence the trial court was in error.
 
 
 33
 Even if we elect to treat the two exhaustion requirements independently, and accepting arguendo that administrative exhaustion is desirable and ought to be required, this does not support a judicial exhaustion requirement for two reasons. First, the benefit of requiring administrative exhaustion is that it gives the parties and the court the benefit of the agency's longstanding expertise with the intricacies of statutes like Medicaid. The same does not hold for requiring exhaustion of state court remedies.
 
 
 34
 More importantly, if we were to require exhaustion of judicial remedies, the doctrine of res judicata and collateral estoppel would mean that an unfavorable state court opinion would have issue preclusive effects that would bar the party from relitigating his claim in federal court--eviscerating the supplemental nature of Section 1983. Loudermill, 721 F.2d at 555 & n. 6; The Supreme Court, 1981 Term, 96 Harv.L.Rev. 62, 210 (1982); Comment, Exhaustion of State Administrative Remedies in Section 1983 Cases, 41 U.Chi.L.Rev. 537, 541 (1974). A decision by an administrative agency would of course not have this preclusive effect. Requiring exhaustion of state court remedies is both obviously undesirable and inconsistent with the well-settled desire of Congress to promote "the free, unimpeded resort to 1983." Patsy, 457 U.S. at 509, 102 S.Ct. at 2564 (quoting Rep. Kastenmeier). Accordingly, it was error for the trial court to impose such a requirement.
 
 III.
 
 35
 For the reasons foregoing, we hold that the trial court was correct in finding that there may be implicit exceptions to the rule of Patsy. But we determine that the trial court was incorrect in finding the existence of such an exception in the language of the Medicaid Act. Likewise, the trial court was incorrect in imposing a requirement that the appellant exhaust available state judicial remedies. Accordingly, it was error to grant the motion for summary judgment.
 
 
 36
 AFFIRMED in part, REVERSED in part, and REMANDED for trial.
 
 
 
 *
 Honorable Harold L. Murphy, U.S. District Judge for the Northern District of Georgia, sitting by designation
 
 
 [1]
 "The legislative history of [the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. Sec. 1997 et seq. (1985) ["CRIPA"]] demonstrates that Congress has taken the approach of carving out specific exceptions to the general rule...." 457 U.S. at 512, 102 S.Ct. at 2565. The creation of a "detailed scheme [as with CRIPA] is inconsistent with discretion to impose, on an ad hoc basis, a judicially developed exhaustion rule in other cases." 457 U.S. at 511, 102 S.Ct. at 2565. "Implicit in this decision [to enact CRIPA] is Congress' conclusion that the no-exhaustion rule should be left standing with respect to other Sec. 1983 suits." Id. at 509, 102 S.Ct. at 2564. "In [CRIPA] Congress also created a specific, limited exhaustion requirement...." Id. at 508, 102 S.Ct. at 2563
 
 
 [2]
 The Sixth Circuit has also recognized the tension between the holdings in Patsy and McNary in a case involving a claim under the Ohio civil service law:
 We note that the Patsy decision is not easily reconcilable with the Court's earlier decision in [McNary ], where the Court left open the possibility of exceptions to the no-exhaustion requirement. While we believe that Patsy has not precluded the possibility of fashioning future exceptions to the no-exhaustion rule, we find that such an exception would be inappropriate in the instant cases.... Nor do we believe that the instant actions fall within the range of exceptions contemplated by Justice Brennan in his concurrence in [McNary ].
 Loudermill v. Cleveland Board of Education, 721 F.2d 550, 555 n. 5 (6th Cir.1983), aff'd on other grounds, --- U.S. ----, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).
 
 
 [3]
 Since the decision in Patsy at least one court has reaffirmed that ADC does not require exhaustion before bringing a Section 1983 action. Walker v. Adams, 578 F.Supp. 50, 52 (W.D.Ky.1983), aff'd on other grounds, 741 F.2d 116 (6th Cir.1984)
 
 
 [4]
 See also, Loudermill, 721 F.2d at 555 n. 5 (court declines to find implicit requirement of judicial exhaustion because "we find that such an exception would be inappropriate in the instant cases where appellants exhausted their administrative remedies. The Courts have never even intimated that exhaustion of state judicial remedies in Sec. 1983 cases should be required, as it is in habeas corpus cases.")