**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GEORGIA F. TALBOT,
Plaintiff-Appellant,

v.

LUCY CORR NURSING HOME; JACOB
W. MAST, in his capacity as
Administrator of the Lucy Corr
Nursing Home,
Defendants-Appellees.

No. 96-1915

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-95-978)

Argued: May 7, 1997

Decided: July 1, 1997

Before NIEMEYER and HAMILTON, Circuit Judges, and LEGG,
United States District Judge for the District of Maryland, sitting by
designation.

_____

Vacated and remanded by published opinion. Judge Hamilton wrote
the opinion, in which Judge Niemeyer and Judge Legg joined.

_____

**COUNSEL**

**ARGUED:** Edwin Ford Stephens, CHRISTIAN & BARTON, L.L.P.,
Richmond, Virginia, for Appellant. Lloyd Lee Byrd, SANDS,

ANDERSON, MARKS & MILLER, Richmond, Virginia, for Appel-
lees. **ON BRIEF:** Michael W. Smith, John W. Montgomery, Jr.,
CHRISTIAN & BARTON, L.L.P., Richmond, Virginia, for Appel-
lant. Frank B. Miller, III, John B. Catlett, Jr., SANDS, ANDERSON,
MARKS & MILLER, Richmond, Virginia, for Appellees.

_____

**OPINION**

HAMILTON, Circuit Judge:

The issue presented by this appeal is whether a plaintiff who
alleges a violation of the nursing care facility resident rights provi-
sions of the Medicare Act, see 42 U.S.C. § 1395i-3(c), must exhaust
her state administrative remedies before bringing a cause of action
for
those violations pursuant to 42 U.S.C. § 1983. Because we hold that
the exhaustion of state administrative remedies is not required
under
such circumstances, we vacate the district court's order dismissing
appellant Georgia Talbot's complaint and remand for further
proceed-
ings consistent with this opinion.

I.

Talbot is a 71-year-old resident of Chesterfield County, Virginia,
who suffers from diabetes and other physical ailments that require
her
to use a wheelchair and result in the need for trained nursing
care.
From June 24, 1994 until August 31, 1995, Talbot was a resident at
appellee Lucy Corr Nursing Home (Lucy Corr), located in Chester-
field County.

Talbot alleges that while she lived at Lucy Corr, her care and
treat-
ment progressively worsened in an environment in which almost
every night other residents yelled and cried, making it impossible
for
Talbot to sleep. Talbot alleges that she frequently awoke at night
to
find another resident standing at the foot of her bed, staring and
yell-
ing at her. According to Talbot, Lucy Corr did little to change the
dis-
ruptive behavior of other residents and, instead, began to change
its
treatment and conduct toward her. Specifically, Talbot alleges
that, on
some occasions, Lucy Corr staff refused to respond to her "call

but-

ton" or otherwise refused to communicate with her. At other times, Talbot alleges, she was not catheterized on schedule and was not promptly provided other required care. In addition, Talbot alleges that Lucy Corr increasingly ignored her and refused to resolve her grievances and concerns.

On July 18, 1995, Lucy Corr reclassified the level of Talbot's care and changed the classification of her bed from "intermediate" to "skilled care." According to Talbot, this change was made without consulting her and without any change in the health care provided to her; nevertheless, the reclassification resulted in an increase in the daily cost of Talbot's care from $103 to $120. Talbot asserts that Lucy Corr did not similarly reclassify the treatment given to other residents.

On July 12, 1995, Jacob W. Mast, administrator of Lucy Corr, sent a letter to Gwen Talbot, Georgia Talbot's daughter and her responsible party, advising Gwen Talbot that he was giving her thirty days' notice of Lucy Corr's intent to terminate the patient care agreement entered into between the parties and to evict Georgia Talbot. Subsequent to that initial notice, by letters dated July 26, 1995, and August 4, 1995, Lucy Corr advised Gwen Talbot of appeal rights which were available to her and her mother. On August 31, 1995, Lucy Corr evicted Talbot.

On September 1, 1995, Talbot filed an appeal with the Commonwealth of Virginia Department of Medical Assistance Services (the Department). The Department hearing officer assigned to hear Talbot's case informed her on September 25, 1995 that the Department Appeals Division had authority and jurisdiction over issues relating to nursing home discharges, admissions, and transfers. The hearing officer also informed Talbot, however, that the Appeals Division did not have jurisdiction to consider issues relating to the quality of care provided by the nursing home. Talbot subsequently withdrew her appeal.

On December 8, 1995, pursuant to 42 U.S.C. § 1983, Talbot filed this action in the United States District Court for the Eastern District of Virginia against Lucy Corr and Mast, in his capacity as administra-

tor of Lucy Corr, alleging violations of the Medicare Act and its

3

implementing regulations. Talbot also alleged a state law claim for breach of contract. Pursuant to § 1983, Talbot alleged six counts of violations of the Medicare Act and its implementing regulations, including: (1) unauthorized changes in Talbot's treatment in violation of 42 U.S.C. § 1395i-3(c)(1)(A)(I); (2) retaliation for voicing grievances in violation of § 1395i-3(c)(1)(A)(vi); (3) eviction in violation of § 1395i-3(c)(2)(A); (4) abuse in violation of 42 C.F.R. § 483.13(b); (5) staff abuse in violation of 42 C.F.R. § 483.13(c); and (6) failure to provide Talbot with a satisfactory quality of life in violation of 42 C.F.R. § 483.15.

Lucy Corr and Mast subsequently filed a motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) on the following grounds: (1) that the complaint failed to allege the requisite state action necessary to support a claim under § 1983; (2) that Lucy Corr and Mast are not"persons" amenable to suit under § 1983; (3) that Lucy Corr and Mast are entitled to Eleventh Amendment immunity; (4) that Talbot had failed to exhaust her administrative remedies; and (5) that the complaint failed to state a cause of action upon which relief could be granted under the Act. On March 19, 1996, the district court entered a memorandum opinion and order granting Lucy Corr and Mast's motion to dismiss under Rule 12(b)(1), finding that it lacked subject matter jurisdiction over Talbot's complaint because Talbot failed to exhaust her state administrative remedies. The district court did not address Lucy Corr and Mast's motion to dismiss for failure to state a claim upon which relief could be granted under Rule 12(b)(6).

On April 2, 1996, Talbot filed a motion to alter or amend the judgment, and on May 29, 1996, the district court denied Talbot's motion. Talbot then noted a timely appeal.

II.

Whether a district court properly required a plaintiff to exhaust her administrative remedies before bringing suit in federal court is a

ques-
tion of law. <u>See Alacare, Inc.-North v. Baggiano</u>, 785 F.2d 963, 965
(11th Cir. 1986). Therefore, we review the district court's order <u>de</u>
<u>novo</u>. <u>See id.</u>

4

III.

In <u>Patsy v. Board of Regents</u>, 457 U.S. 496 (1982), the Supreme Court held that, as a general rule, a plaintiff bringing a suit pursuant to 42 U.S.C. § 1983 does not have to exhaust state administrative remedies before filing suit in federal court. <u>See id.</u> at 512. In so holding, the Supreme Court first considered the legislative history of § 1 of the Civil Rights Act of 1871, the precursor to § 1983, to discern whether requiring the exhaustion of state administrative remedies was consistent with Congress' intent in enacting § 1. <u>See id.</u> at 502-07. From the legislative history, the Court concluded that it was "fair to infer that the 1871 Congress did not intend that an individual be compelled in every case to exhaust state administrative remedies before filing an action under § 1." <u>See id.</u> at 507.

The <u>Patsy</u> Court then considered the text and legislative history of 42 U.S.C. § 1997e, in which Congress created a specific, limited exhaustion requirement for adult prisoners bringing actions pursuant to § 1983. <u>See id.</u> at 502-12. The Court determined that the explicit exhaustion requirement contained in that provision only made sense if exhaustion could not be required before its enactment and if Congress intended to carve out a narrow exception to a general no-exhaustion rule already understood to follow from § 1983. <u>See id.</u> at 512.

Since <u>Patsy</u>, the Supreme Court, this court, and other circuit courts of appeals have confirmed that, as a general rule, exhaustion of state administrative remedies is not required prior to bringing suit under § 1983. <u>See, e.g.</u>, <u>Wilder v. Virginia Hosp. Ass'n</u>, 496 U.S. 498, 523 (1990) ("The availability of state administrative procedures ordinarily does not foreclose resort to § 1983."); <u>Felder v. Casey</u>, 487 U.S. 131, 147 (1988) ("plaintiffs need not exhaust state administrative remedies before instituting § 1983 suits in federal court"); <u>VanHarken v. City of Chicago</u>, 103 F.3d 1346, 1349 (7th Cir. 1997) (<u>Patsy</u> expressly

rejected a requirement of exhausting administrative remedies before suing under § 1983); Jeremy H. v. Mt. Lebanon Sch. Dist., 95 F.3d 272, 283 n.20 (3d Cir. 1996) ("the policies of section 1983 strongly
disfavor the imposition of additional exhaustion requirements"); Thornquest v. King, 61 F.3d 837, 841 n.3 (11th Cir. 1995) ("a section 1983 claim cannot be barred by a plaintiff's failure to exhaust

5

state administrative remedies with respect to an unreviewed adminis-
trative action"); <u>Woods v. Smith</u>, 60 F.3d 1161, 1165 (5th Cir. 1995)
("[E]xhaustion of state judicial or administrative remedies is not a
prerequisite to the bringing of a section 1983 claim."); <u>Wilbur v. Harris</u>, 53 F.3d 542, 544 (2d Cir. 1995) (recognizing that exhaustion
of state administrative remedies is not required as a prerequisite to
bringing an action pursuant to § 1983); <u>Hall v. Marion Sch. Dist. No. Two</u>, 31 F.3d 183, 190-91 (4th Cir. 1994) (recognizing that exhaus-
tion of state administrative remedies is not a prerequisite to bringing
a § 1983 action). Thus, courts universally agree that the exhaustion of
state administrative remedies is generally not required prior to bring-
ing an action under § 1983 in federal court.

Two exceptions to this no-exhaustion rule have been recognized,
however. First, as recognized in <u>Patsy</u> in the context of 42 U.S.C.
§ 1997e, Congress may explicitly provide that state administrative
remedies must be exhausted before bringing suit under a particular
federal law pursuant to § 1983. <u>See Patsy</u>, 457 U.S. at 508. Second,
Congress may implicitly require the exhaustion of state administrative
remedies where "`the obligation to require exhaustion of administra-
tive remedies may be fairly understood from congressional action.'"
<u>Alacare, Inc.-North v. Baggiano</u>, 785 F.2d 963, 966 (11th Cir. 1986)
(citation omitted); <u>see also Patsy</u>, 457 U.S. at 502 n.4 (stating, in the
context of discussing the exhaustion of <u>federal</u> administrative reme-
dies, that "[e]ven where the statutory requirement of exhaustion is not
explicit, courts are guided by congressional intent in determining
whether application of the doctrine would be consistent with the statu-
tory scheme"). The mere provision of state administrative remedies,
however, is not enough to demonstrate an implicit Congressional
intent to impose an exhaustion requirement on a plaintiff seeking to
bring a § 1983 action. <u>See Alacare</u>, 785 F.2d at 967-68 ("[T]he mere
fact that Congress created parallel and perhaps duplicative avenues
for review does not, standing alone, demonstrate an implicit purpose
to impose an exhaustion requirement."); <u>see also Monroe v. Pape</u>, 365
U.S. 167, 183 (1961) (noting that federal remedy under § 1983 is

sup-
plementary to state remedy). If there is doubt as to whether an excep-
tion applies, courts should refrain from requiring exhaustion in § 1983
suits because " Patsy leaves no doubt that the presumption is strongly
in favor of no exception." Alacare, 785 F.2d at 967 (emphasis in orig-
inal).

6

In this case, neither exception applies. As to the first exception, Congress did not explicitly require the exhaustion of state administra-tive remedies prior to bringing a § 1983 suit based on violations of the Medicare Act.**1** Therefore, the issue in this case is whether Congress implicitly evidenced its intent to require exhaustion by providing for particular state administrative enforcement mechanisms in the Medi-care Act.

While no court has apparently addressed whether there is a state administrative remedy exhaustion requirement before bringing suit under § 1983 for violations of the Medicare Act, the Eleventh Circuit has addressed the exhaustion of state administrative remedies in the context of the Medicaid Act**2** and § 1983 suits. See Alacare, 785 F.2d at 967-69. In Alacare, the Eleventh Circuit held, in accordance with Patsy, that plaintiffs asserting violations of the Medicaid Act pursuant to § 1983 do not have to exhaust their state administrative remedies

_____

**1** As Lucy Corr noted in its brief supporting its motion to dismiss in the district court, the Medicare Act does contain an explicit exhaustion requirement for claims contesting the determination of entitlement to benefits under 42 U.S.C. § 1395ff(a). See 42 U.S.C. § 1395ii (incorporat-ing requirements contained in certain sections of 42 U.S.C. § 405 into Medicare Act); Heckler v. Ringer, 466 U.S. 602, 614 (1984) (holding that exhaustion requirement contained in § 1395ii applies to claim for benefits). However, this exhaustion requirement applies to federal administrative remedies that provide for the review of benefit determina-tions. See 42 U.S.C. § 1395ii. Since the issue in this case is the exhaus-tion of state administrative remedies and since Talbot's claim is not for benefits under the Medicare Act, but rather for damages resulting from a violation of the resident rights provisions, the exhaustion requirement contained in § 1395ii does not apply to bar this suit. Cf. Buckner v. Heckler, 804 F.2d 258, 250 (4th Cir. 1986) (requiring exhaustion of

federal administrative remedies by plaintiff asserting claim for benefits under the Medicare Act).

**2** Because both the Medicare Act and the Medicaid Act contain parallel nursing care facility resident rights provisions and require participation by the states to ensure compliance with these provisions, see 42 U.S.C. §§ 1395i-3 and 1396r, decisions considering the exhaustion of state administrative remedies in the context of the Medicaid Act are instructive in determining whether exhaustion is required under the Medicare Act.

7

prior to doing so. <u>See id.</u> In holding against an exhaustion require-
ment, the <u>Alacare</u> court rejected the notion that the existence of a
federally-mandated state administrative review process was sufficient
to evidence Congress' intent that exhaustion of those remedies should
be required before permitting a § 1983 claim. <u>See id.</u> at 967-68. The
<u>Alacare</u> court emphasized that § 1983 was designed to be "an alter-
nate, <u>supplemental</u> avenue for relief to persons who almost always
have an additional available remedy at state law." <u>Id.</u> at 967 (empha-
sis in original). The <u>Alacare</u> court also reasoned that to hold that the
mere existence of a state remedial scheme is sufficient to support an
exhaustion requirement would eviscerate the general rule established
in <u>Patsy</u> and would dramatically narrow the scope of relief available
under § 1983. <u>See id.</u> at 968; <u>see also Greenwald v. Axelrod (In re:</u>
<u>Greenwald)</u>, 48 B.R. 263, 270-71 (S.D.N.Y. 1984) (holding no
exhaustion requirement in § 1983 suit alleging violations of the Med-
icaid Act); <u>but see Arden House, Inc. v. Heintz</u>, 612 F. Supp. 81, 85
(D. Conn. 1985) (holding that there is an exhaustion requirement in
§ 1983 suits asserting violations of the Medicaid Act); <u>St. Joseph</u>
<u>Hosp. v. Electronic Data Sys. Corp.</u>, 573 F. Supp. 443, 450 (S.D.
Tex. 1983) (same).

We agree with the reasoning of the Eleventh Circuit in <u>Alacare</u> and
believe that it applies with equal force to the issue presented in this
case. There is no question but that, as emphasized by Lucy Corr and
the district court, the Medicare Act and its implementing regulations
contain numerous provisions setting forth residents' rights, quality of
care parameters, and specific survey, certification, and enforcement
procedures. <u>See, e.g.</u>, 42 U.S.C. §§ 1395i-3(c), (e), (g), (h); 42 C.F.R.
§§ 483.10, 483.12, 483.13, 483.15, and 483.25. In addition, the
administrative scheme set forth in the Medicare Act includes a state
appeals process for the transfer and discharge of patients. <u>See</u> 42
C.F.R. § 431.205. Virginia has complied with these provisions by
providing for a right of appeal to the Department following a transfer

or discharge from a nursing home. <u>See</u> 12 Va. Admin. Code § 30-110-90.

The state administrative hearing provisions under the Medicare Act are limited, however. These provisions do not, for example, require the state agency to establish hearing procedures for complaints based
on the quality of care and, therefore, do not appear to encompass all

8

of Talbot's claims. Although the Medicare Act does require that resi-
dents be informed of their right to file a complaint with a state survey
and certification agency respecting abuse and neglect, <u>see</u> 42 U.S.C.
§ 1395i-3(c)(1)(B), it does not appear that this remedy affords indi-
vidual relief, such as that sought by Talbot, <u>see id.</u> § 1395i-3(h). In
addition, as explained by the hearing officer assigned to Talbot's
claim, the right to appeal a discharge to the Department does not
appear to include the right to assert claims of maltreatment or claims
that the nursing care facility has violated the quality of care provi-
sions of the Medicare Act.

In the face of the strong presumption against requiring the exhaus-
tion of state administrative remedies in § 1983 suits, the existence of
these state administrative review procedures does not suffice to evi-
dence Congress' intent to implicitly create an exhaustion requirement
for claims asserted under the resident rights provisions of the Medi-
care Act pursuant to § 1983. This conclusion makes particular sense
where, as here, the state administrative procedures do not encompass
many of the claims asserted by the plaintiff. Because the district court
in this case required Talbot to exhaust her state administrative reme-
dies before bringing this suit, its decision was in error.

IV.

For the foregoing reasons, we vacate the district court's grant of
Lucy Corr and Mast's motion to dismiss pursuant to Rule 12(b)(1) **3**
for Talbot's failure to exhaust her state administrative remedies and
remand this matter for further proceedings consistent with this opin-
ion.

<u>VACATED AND REMANDED</u>

_____

**3** We note that the district court expressly declined to rule on Lucy Corr
and Mast's motion to dismiss for failure to state a claim upon which

relief could be granted under Federal Rule of Civil Procedure 12(b)(6).
The district court is free, on remand, to consider all of the grounds previously asserted by Lucy Corr and Mast, and we express no opinion as to their merits.

9