118 F.3d 215
 53 Soc.Sec.Rep.Ser. 723, Medicare & Medicaid Guide
P 45,469
Georgia F. TALBOT, Plaintiff-Appellant,
v.
LUCY CORR NURSING HOME; Jacob W. Mast, in his capacity as
Administrator of the Lucy Corr Nursing Home,
Defendants-Appellees.
 No. 96-1915.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 7, 1997.
Decided July 1, 1997.
 
 ARGUED: Edwin Ford Stephens, Christian & Barton, L.L.P., Richmond, VA, for Appellant. Lloyd Lee Byrd, Sands, Anderson, Marks & Miller, Richmond, VA, for Appellees. ON BRIEF: Michael W. Smith, John W. Montgomery, Jr., Christian & Barton, L.L.P., Richmond, VA, for Appellant. Frank B. Miller, III, John B. Catlett, Jr., Sands, Anderson, Marks & Miller, Richmond, VA, for Appellees.
 Before NIEMEYER and HAMILTON, Circuit Judges, and LEGG, United States District Judge for the District of Maryland, sitting by designation.
 Vacated and remanded by published opinion. Judge HAMILTON wrote the opinion, in which Judge NIEMEYER and Judge LEGG joined.
 OPINION
 HAMILTON, Circuit Judge:
 
 
 1
 The issue presented by this appeal is whether a plaintiff who alleges a violation of the nursing care facility resident rights provisions of the Medicare Act, see 42 U.S.C. § 1395i-3(c), must exhaust her state administrative remedies before bringing a cause of action for those violations pursuant to 42 U.S.C. § 1983. Because we hold that the exhaustion of state administrative remedies is not required under such circumstances, we vacate the district court's order dismissing appellant Georgia Talbot's complaint and remand for further proceedings consistent with this opinion.
 
 I.
 
 2
 Talbot is a 71-year-old resident of Chesterfield County, Virginia, who suffers from diabetes and other physical ailments that require her to use a wheelchair and result in the need for trained nursing care. From June 24, 1994 until August 31, 1995, Talbot was a resident at appellee Lucy Corr Nursing Home (Lucy Corr), located in Chesterfield County.
 
 
 3
 Talbot alleges that while she lived at Lucy Corr, her care and treatment progressively worsened in an environment in which almost every night other residents yelled and cried, making it impossible for Talbot to sleep. Talbot alleges that she frequently awoke at night to find another resident standing at the foot of her bed, staring and yelling at her. According to Talbot, Lucy Corr did little to change the disruptive behavior of other residents and, instead, began to change its treatment and conduct toward her. Specifically, Talbot alleges that, on some occasions, Lucy Corr staff refused to respond to her "call but ton" or otherwise refused to communicate with her. At other times, Talbot alleges, she was not catheterized on schedule and was not promptly provided other required care. In addition, Talbot alleges that Lucy Corr increasingly ignored her and refused to resolve her grievances and concerns.
 
 
 4
 On July 18, 1995, Lucy Corr reclassified the level of Talbot's care and changed the classification of her bed from "intermediate" to "skilled care." According to Talbot, this change was made without consulting her and without any change in the health care provided to her; nevertheless, the reclassification resulted in an increase in the daily cost of Talbot's care from $103 to $120. Talbot asserts that Lucy Corr did not similarly reclassify the treatment given to other residents.
 
 
 5
 On July 12, 1995, Jacob W. Mast, administrator of Lucy Corr, sent a letter to Gwen Talbot, Georgia Talbot's daughter and her responsible party, advising Gwen Talbot that he was giving her thirty days' notice of Lucy Corr's intent to terminate the patient care agreement entered into between the parties and to evict Georgia Talbot. Subsequent to that initial notice, by letters dated July 26, 1995, and August 4, 1995, Lucy Corr advised Gwen Talbot of appeal rights which were available to her and her mother. On August 31, 1995, Lucy Corr evicted Talbot.
 
 
 6
 On September 1, 1995, Talbot filed an appeal with the Commonwealth of Virginia Department of Medical Assistance Services (the Department). The Department hearing officer assigned to hear Talbot's case informed her on September 25, 1995 that the Department Appeals Division had authority and jurisdiction over issues relating to nursing home discharges, admissions, and transfers. The hearing officer also informed Talbot, however, that the Appeals Division did not have jurisdiction to consider issues relating to the quality of care provided by the nursing home. Talbot subsequently withdrew her appeal.
 
 
 7
 On December 8, 1995, pursuant to 42 U.S.C. § 1983, Talbot filed this action in the United States District Court for the Eastern District of Virginia against Lucy Corr and Mast, in his capacity as administrator of Lucy Corr, alleging violations of the Medicare Act and its implementing regulations. Talbot also alleged a state law claim for breach of contract. Pursuant to § 1983, Talbot alleged six counts of violations of the Medicare Act and its implementing regulations, including: (1) unauthorized changes in Talbot's treatment in violation of 42 U.S.C. § 1395i-3(c)(1)(A)(I); (2) retaliation for voicing grievances in violation of § 1395i-3(c)(1)(A)(vi); (3) eviction in violation of § 1395i-3(c)(2)(A); (4) abuse in violation of 42 C.F.R. § 483.13(b); (5) staff abuse in violation of 42 C.F.R. § 483.13(c); and (6) failure to provide Talbot with a satisfactory quality of life in violation of 42 C.F.R. § 483.15.
 
 
 8
 Lucy Corr and Mast subsequently filed a motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) on the following grounds: (1) that the complaint failed to allege the requisite state action necessary to support a claim under § 1983; (2) that Lucy Corr and Mast are not "persons" amenable to suit under § 1983; (3) that Lucy Corr and Mast are entitled to Eleventh Amendment immunity; (4) that Talbot had failed to exhaust her administrative remedies; and (5) that the complaint failed to state a cause of action upon which relief could be granted under the Act. On March 19, 1996, the district court entered a memorandum opinion and order granting Lucy Corr and Mast's motion to dismiss under Rule 12(b)(1), finding that it lacked subject matter jurisdiction over Talbot's complaint because Talbot failed to exhaust her state administrative remedies. The district court did not address Lucy Corr and Mast's motion to dismiss for failure to state a claim upon which relief could be granted under Rule 12(b)(6).
 
 
 9
 On April 2, 1996, Talbot filed a motion to alter or amend the judgment, and on May 29, 1996, the district court denied Talbot's motion. Talbot then noted a timely appeal.
 
 II.
 
 10
 Whether a district court properly required a plaintiff to exhaust her administrative remedies before bringing suit in federal court is a question of law. See Alacare, Inc.-North v. Baggiano, 785 F.2d 963, 965 (11th Cir.1986). Therefore, we review the district court's order de novo. See id.
 
 III.
 
 11
 In Patsy v. Board of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), the Supreme Court held that, as a general rule, a plaintiff bringing a suit pursuant to 42 U.S.C. § 1983 does not have to exhaust state administrative remedies before filing suit in federal court. See id. at 512, 102 S.Ct. at 2565-66. In so holding, the Supreme Court first considered the legislative history of § 1 of the Civil Rights Act of 1871, the precursor to § 1983, to discern whether requiring the exhaustion of state administrative remedies was consistent with Congress' intent in enacting § 1. See id. at 502-07, 102 S.Ct. at 2560-63. From the legislative history, the Court concluded that it was "fair to infer that the 1871 Congress did not intend that an individual be compelled in every case to exhaust state administrative remedies before filing an action under § 1." See id. at 507, 102 S.Ct. at 2563.
 
 
 12
 The Patsy Court then considered the text and legislative history of 42 U.S.C. § 1997e, in which Congress created a specific, limited exhaustion requirement for adult prisoners bringing actions pursuant to § 1983. See id. at 502-12, 102 S.Ct. at 2560-66. The Court determined that the explicit exhaustion requirement contained in that provision only made sense if exhaustion could not be required before its enactment and if Congress intended to carve out a narrow exception to a general no-exhaustion rule already understood to follow from § 1983. See id. at 512, 102 S.Ct. at 2565-66.
 
 
 13
 Since Patsy, the Supreme Court, this court, and other circuit courts of appeals have confirmed that, as a general rule, exhaustion of state administrative remedies is not required prior to bringing suit under § 1983. See, e.g., Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 523, 110 S.Ct. 2510, 2524, 110 L.Ed.2d 455 (1990) ("The availability of state administrative procedures ordinarily does not foreclose resort to § 1983."); Felder v. Casey, 487 U.S. 131, 147, 108 S.Ct. 2302, 2311, 101 L.Ed.2d 123 (1988) ("plaintiffs need not exhaust state administrative remedies before instituting § 1983 suits in federal court"); VanHarken v. City of Chicago, 103 F.3d 1346, 1349 (7th Cir.1997) (Patsy expressly rejected a requirement of exhausting administrative remedies before suing under § 1983); Jeremy H. v. Mt. Lebanon Sch. Dist., 95 F.3d 272, 283 n. 20 (3d Cir.1996) ("the policies of section 1983 strongly disfavor the imposition of additional exhaustion requirements"); Thornquest v. King, 61 F.3d 837, 841 n. 3 (11th Cir.1995) ("a section 1983 claim cannot be barred by a plaintiff's failure to exhaust state administrative remedies with respect to an unreviewed administrative action"); Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir.1995) ("[E]xhaustion of state judicial or administrative remedies is not a prerequisite to the bringing of a section 1983 claim."); Wilbur v. Harris, 53 F.3d 542, 544 (2d Cir.1995) (recognizing that exhaustion of state administrative remedies is not required as a prerequisite to bringing an action pursuant to § 1983); Hall v. Marion Sch. Dist. No. Two, 31 F.3d 183, 190-91 (4th Cir.1994) (recognizing that exhaustion of state administrative remedies is not a prerequisite to bringing a § 1983 action). Thus, courts universally agree that the exhaustion of state administrative remedies is generally not required prior to bringing an action under § 1983 in federal court.
 
 
 14
 Two exceptions to this no-exhaustion rule have been recognized, however. First, as recognized in Patsy in the context of 42 U.S.C. § 1997e, Congress may explicitly provide that state administrative remedies must be exhausted before bringing suit under a particular federal law pursuant to § 1983. See Patsy, 457 U.S. at 508, 102 S.Ct. at 2563-64. Second, Congress may implicitly require the exhaustion of state administrative remedies where " 'the obligation to require exhaustion of administrative remedies may be fairly understood from congressional action.' " Alacare, Inc.-North v. Baggiano, 785 F.2d 963, 966 (11th Cir.1986) (citation omitted); see also Patsy, 457 U.S. at 502 n. 4, 102 S.Ct. at 2560 n. 4 (stating, in the context of discussing the exhaustion of federal administrative remedies, that "[e]ven where the statutory requirement of exhaustion is not explicit, courts are guided by congressional intent in determining whether application of the doctrine would be consistent with the statutory scheme"). The mere provision of state administrative remedies, however, is not enough to demonstrate an implicit Congressional intent to impose an exhaustion requirement on a plaintiff seeking to bring a § 1983 action. See Alacare, 785 F.2d at 967-68 ("[T]he mere fact that Congress created parallel and perhaps duplicative avenues for review does not, standing alone, demonstrate an implicit purpose to impose an exhaustion requirement."); see also Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 481-82, 5 L.Ed.2d 492 (1961) (noting that federal remedy under § 1983 is supplementary to state remedy). If there is doubt as to whether an exception applies, courts should refrain from requiring exhaustion in § 1983 suits because " Patsy leaves no doubt that the presumption is strongly in favor of no exception." Alacare, 785 F.2d at 967 (emphasis in original).
 
 
 15
 In this case, neither exception applies. As to the first exception, Congress did not explicitly require the exhaustion of state administrative remedies prior to bringing a § 1983 suit based on violations of the Medicare Act.[1] Therefore, the issue in this case is whether Congress implicitly evidenced its intent to require exhaustion by providing for particular state administrative enforcement mechanisms in the Medicare Act.
 
 
 16
 While no court has apparently addressed whether there is a state administrative remedy exhaustion requirement before bringing suit under § 1983 for violations of the Medicare Act, the Eleventh Circuit has addressed the exhaustion of state administrative remedies in the context of the Medicaid Act[2] and § 1983 suits. See Alacare, 785 F.2d at 967-69. In Alacare, the Eleventh Circuit held, in accordance with Patsy, that plaintiffs asserting violations of the Medicaid Act pursuant to § 1983 do not have to exhaust their state administrative remedies prior to doing so. See id. In holding against an exhaustion requirement, the Alacare court rejected the notion that the existence of a federally-mandated state administrative review process was sufficient to evidence Congress' intent that exhaustion of those remedies should be required before permitting a § 1983 claim. See id. at 967-68. The Alacare court emphasized that § 1983 was designed to be "an alternate, supplemental avenue for relief to persons who almost always have an additional available remedy at state law." Id. at 967 (emphasis in original). The Alacare court also reasoned that to hold that the mere existence of a state remedial scheme is sufficient to support an exhaustion requirement would eviscerate the general rule established in Patsy and would dramatically narrow the scope of relief available under § 1983. See id. at 968; see also Greenwald v. Axelrod (In re: Greenwald), 48 B.R. 263, 270-71 (S.D.N.Y.1984) (holding no exhaustion requirement in § 1983 suit alleging violations of the Medicaid Act); but see Arden House, Inc. v. Heintz, 612 F.Supp. 81, 85 (D.Conn.1985) (holding that there is an exhaustion requirement in § 1983 suits asserting violations of the Medicaid Act); St. Joseph Hosp. v. Electronic Data Sys. Corp., 573 F.Supp. 443, 450 (S.D.Tex.1983) (same).
 
 
 17
 We agree with the reasoning of the Eleventh Circuit in Alacare and believe that it applies with equal force to the issue presented in this case. There is no question but that, as emphasized by Lucy Corr and the district court, the Medicare Act and its implementing regulations contain numerous provisions setting forth residents' rights, quality of care parameters, and specific survey, certification, and enforcement procedures. See, e.g., 42 U.S.C. §§ 1395i-3(c), (e), (g), (h); 42 C.F.R. §§ 483.10, 483.12, 483.13, 483.15, and 483.25. In addition, the administrative scheme set forth in the Medicare Act includes a state appeals process for the transfer and discharge of patients. See 42 C.F.R. § 431.205. Virginia has complied with these provisions by providing for a right of appeal to the Department following a transfer or discharge from a nursing home. See 12 Va. Admin. Code § 30-110-90.
 
 
 18
 The state administrative hearing provisions under the Medicare Act are limited, however. These provisions do not, for example, require the state agency to establish hearing procedures for complaints based on the quality of care and, therefore, do not appear to encompass all of Talbot's claims. Although the Medicare Act does require that residents be informed of their right to file a complaint with a state survey and certification agency respecting abuse and neglect, see 42 U.S.C. § 1395i-3(c)(1)(B), it does not appear that this remedy affords individual relief, such as that sought by Talbot, see id. § 1395i-3(h). In addition, as explained by the hearing officer assigned to Talbot's claim, the right to appeal a discharge to the Department does not appear to include the right to assert claims of maltreatment or claims that the nursing care facility has violated the quality of care provisions of the Medicare Act.
 
 
 19
 In the face of the strong presumption against requiring the exhaustion of state administrative remedies in § 1983 suits, the existence of these state administrative review procedures does not suffice to evidence Congress' intent to implicitly create an exhaustion requirement for claims asserted under the resident rights provisions of the Medicare Act pursuant to § 1983. This conclusion makes particular sense where, as here, the state administrative procedures do not encompass many of the claims asserted by the plaintiff. Because the district court in this case required Talbot to exhaust her state administrative remedies before bringing this suit, its decision was in error.
 
 IV.
 
 20
 For the foregoing reasons, we vacate the district court's grant of Lucy Corr and Mast's motion to dismiss pursuant to Rule 12(b)(1)[3] for Talbot's failure to exhaust her state administrative remedies and remand this matter for further proceedings consistent with this opinion.
 
 
 21
 VACATED AND REMANDED.
 
 
 
 [1]
 As Lucy Corr noted in its brief supporting its motion to dismiss in the district court, the Medicare Act does contain an explicit exhaustion requirement for claims contesting the determination of entitlement to benefits under 42 U.S.C. § 1395ff(a). See 42 U.S.C. § 1395ii (incorporating requirements contained in certain sections of 42 U.S.C. § 405 into Medicare Act); Heckler v. Ringer, 466 U.S. 602, 614, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984) (holding that exhaustion requirement contained in § 1395ii applies to claim for benefits). However, this exhaustion requirement applies to federal administrative remedies that provide for the review of benefit determinations. See 42 U.S.C. § 1395ii. Since the issue in this case is the exhaustion of state administrative remedies and since Talbot's claim is not for benefits under the Medicare Act, but rather for damages resulting from a violation of the resident rights provisions, the exhaustion requirement contained in § 1395ii does not apply to bar this suit. Cf. Buckner v. Heckler, 804 F.2d 258, 260 (4th Cir.1986) (requiring exhaustion of federal administrative remedies by plaintiff asserting claim for benefits under the Medicare Act)
 
 
 [2]
 Because both the Medicare Act and the Medicaid Act contain parallel nursing care facility resident rights provisions and require participation by the states to ensure compliance with these provisions, see 42 U.S.C. §§ 1395i-3 and 1396r, decisions considering the exhaustion of state administrative remedies in the context of the Medicaid Act are instructive in determining whether exhaustion is required under the Medicare Act
 
 
 [3]
 We note that the district court expressly declined to rule on Lucy Corr and Mast's motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The district court is free, on remand, to consider all of the grounds previously asserted by Lucy Corr and Mast, and we express no opinion as to their merits