**Robert C. CLIFTON, Plaintiff–Appellant,**

**v.**

**Michael T. SCHAFER, individually and in his official capacity, Defendant–Appellee.**

**No. 91–1693.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 5, 1991.

Decided July 16, 1992.

Charles Kreimendahl (argued), Western Wisconsin Legal Services, Dodgeville, Wis., for plaintiff-appellant.

Michael S. Anderson, Edith F. Merila (argued), Axley & Brynelson, Madison, Wis., for defendant-appellee.

Before CUMMINGS and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

MANION, Circuit Judge.

Robert Clifton, a benefits recipient of the Aid to Families with Dependent Children program, sued under 42 U.S.C. § 1983 over a temporary deprivation of $558 in welfare benefits, benefits that were restored a little more than two months after they were taken away. On December 21, 1989, Judith Andrews, an employee of the Lafayette, Wisconsin County Department of Human Services (the "county"), prepared and sent a letter to Clifton telling him that he was to receive a three-month reduction in AFDC benefits as a sanction for failing to comply with a work program requirement. The letter told Clifton that the sanction was to be imposed as of February 1, 1990, but that Clifton could keep the sanction from taking effect by contacting Andrews. Enclosed with the letter was a notice of hearing form for Clifton to fill out and return to the Wisconsin Department of Health and Social Services (the "state") in Madison if he wanted to request a hearing. As was his routine practice, Michael T. Schafer, the Department Director, signed the letter to Clifton.

On December 28, the county sent Clifton a notice telling him that his benefits were being reduced. The notice reiterated that Clifton could avoid the sanction by contacting Andrews and agreeing to meet all AFDC work program requirements. After sending this notice, Andrews entered a code into the county's computer system that would automatically reduce Clifton's benefits for three months commencing February 1.

In the meantime, Clifton mailed the notice of hearing form he received back to Andrews, although the form stated that it was to be returned to the state. Andrews received the form on January 2. Clifton's responses on the form were bizarre. For example, in response to the question, "What action has been taken to affect your assistance?" Clifton checked boxes indicating that his benefits had been "delayed," "discontinued," "insufficient," and that the county had "reduced benefits" and taken "prejudicial action." And in response to the question, "Why are you asking for a hearing?" Clifton whimsically responded, "Because I'm getting screwed by someone and it does not even feel good. PS I hope I can get a fair hearing this time."

Andrews asked Schafer what to do with the form. Schafer told Andrews to forward the form to the state immediately. Andrews also asked Schafer whether she should remove the benefit reduction code from the computer. Schafer told her to wait until the state provided further instructions.

The Social Security Act and its implementing regulations require states to submit plans for the administration of the AFDC program. See 42 U.S.C. § 602(a). Among other things, a state plan must provide that when a claimant requests a hearing concerning a reduction in or discontinuance of benefits, the benefits will not be reduced or discontinued until a decision is rendered after the hearing. 45 C.F.R. § 205.10(a)(6). It is undisputed that Wisconsin's AFDC plan complies with this requirement. Consistent with the state plan's requirement, the state sent a mes-

sage to Andrews on January 16, 1990, telling her not to "take the action being appealed pending a hearing decision." The notice also asked for a written summary of actions the department had taken on Clifton's case. Andrews prepared a summary and showed it to Schafer. Schafer redrafted a portion of the summary and sent it to the state on January 24.

At this point, the parties' stories diverge. According to Schafer, the temporary reduction in Clifton's benefits was a mistake. Schafer had instructed all staff members that it was the county's policy to comply with all state directives, including directives not to take action before receiving a hearing decision. When Schafer and Andrews discussed the draft summary of actions taken in Clifton's case, Schafer assumed that Andrews was aware of the department's policy to follow state directives. He therefore assumed that Andrews would comply with the state's directive not to "take the action being appealed," which in this case meant to remove the computer code that had been entered to reduce Clifton's benefits. Unfortunately, through some apparent misunderstanding, Andrews failed to remove the computer code, and Clifton's benefits were reduced on February 1.

Although Clifton does not contest that the county's general policy was to comply with state directives such as the one issued in his case, he contends that his reduction in benefits was no mistake; rather, Clifton argues that Schafer made a conscious, intentional decision to reduce his benefits even though Clifton had requested a hearing, and no final decision had been reached in his case. Clifton bases his argument on excerpts of Andrews' testimony at the administrative hearing he eventually received. According to Clifton, when read in the light most favorable to him, Andrews' hearing testimony showed that Schafer told Andrews not to remove the computer code even though he knew the state had notified him not to reduce Clifton's benefits pending the outcome of Clifton's hearing.

As noted, Clifton did receive a hearing in March 1990. The hearing examiner dismissed Clifton's challenge to the sanction against him. However, the examiner ordered the county to restore the benefits Clifton should have received while awaiting his hearing. In April, Schafer sent Clifton a check for $558. As of the date of the district court's decision and, as far as we know, even now, the county department has not imposed the three-month benefit reduction on Clifton because he has challenged that sanction in state court.

Clifton sued Schafer under 42 U.S.C. § 1983, alleging that Schafer deprived him of property without due process by temporarily reducing his benefits without a hearing, and that Schafer violated 45 C.F.R. § 205.10(a)(6)'s requirement that benefits not be reduced without a hearing. The district court granted summary judgment for Schafer. With regard to the due process claim, the court held that Clifton could not show that Schafer intentionally reduced Clifton's benefits. The district court refused to consider Andrews' administrative hearing testimony. The court reasoned that since Clifton's theory depended on Schafer telling Andrews not to remove the code until after he received the state's directive not to sanction Clifton, and Andrews' testimony did not mention the date when Schafer told her to remove the code, her testimony was not relevant to any issue in the case. Alternatively, the court held pursuant to *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), that Schafer did not violate Clifton's due process rights even if he acted intentionally because his action was a random and unauthorized act for which an adequate post-deprivation remedy existed. As for Clifton's regulatory claim, the court held that 45 C.F.R. § 205.10(a)(6) did not confer a right enforceable under § 1983. Clifton appeals.

### I.

■ Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d

265 (1986). A material factual issue exists only if resolving the factual issue might affect the suit's outcome under the governing substantive law. Irrelevant or unnecessary factual disputes do not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The district court concluded that no genuine issue of material fact existed regarding Schafer's intent. According to the court, the undisputed admissible evidence showed at most that Schafer acted negligently when he failed to instruct Andrews to remove the computer code that reduced Clifton's benefits. Clifton attacks this conclusion on two grounds. First, he argues that the district court should have considered Andrews' testimony, and that Andrews' testimony creates a genuine issue regarding Schafer's intent. He also argues that in any event he did not have to show Schafer acted intentionally; instead, according to Clifton, gross negligence, recklessness, or deliberate indifference—the latter two of which Clifton seems to equate with gross negligence—can violate the due process clause, and that a jury might reasonably find that Schafer was grossly negligent even absent Andrews' testimony.

■ Clifton is wrong on the second point. This court has flatly rejected the argument that grossly negligent conduct violates the due process clause. See *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir.1991); *Archie v. City of Racine*, 847 F.2d 1211, 1219–20 (7th Cir.1988) (en banc). We have held that recklessness or deliberate indifference may violate the due process clause. But by reckless or deliberately indifferent conduct, we mean conduct that is criminally reckless—that is, conduct that reflects a complete indifference to risk such that we can infer the actor's knowledge or intent. See *Archie*, 847 F.2d 1211. Without Andrews' testimony, no reasonable jury could find that Schafer's failure

to have the computer code removed was intentional or criminally reckless.

■ Clifton's first argument—that Andrews' testimony was admissible and raises a genuine issue of fact concerning Schafer's intent—fails even if the district court erred by refusing to consider Andrews' testimony and even if that testimony supports an inference that Schafer acted intentionally. Even if intentional, Schafer's action did not deprive Clifton of property without due process because his action was a random and unauthorized act for which an adequate state remedy existed. See *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Easter House v. Felder*, 910 F.2d 1387, 1396–1406 (7th Cir.1990) (en banc).

Clifton argues that the reduction in benefits was neither random nor unauthorized. Clifton points out that Schafer was the person who actually commanded Andrews not to remove the computer code despite knowing that Clifton had requested a hearing. According to Clifton, this shows that Schafer had considerable authority over whether to reduce Clifton's benefits. Clifton also argues that a predeprivation hearing would have been feasible. By this, we take Clifton to mean only that Schafer could easily have removed the computer code and kept Clifton's benefits intact pending the outcome of the administrative hearing. We do not think Clifton is making the absurd argument that Schafer should have held a hearing to determine whether or not to reduce Clifton's benefits pending the result of the hearing that was to determine whether Clifton's benefits should be reduced.

Our en banc opinion in *Easter House* scotches any argument that Schafer's acts here were not "random and unauthorized." [1] In *Easter House*, we emphasized that whether an act is random and unauthorized depends on the state's point of view, not the actor's. Where established

---

1. Clifton (we assume inadvertently) did not cite *Easter House*, a case which represents this circuit's latest and most comprehensive discussion of what constitutes a random and unauthorized act for purposes of due process analysis and was decided almost nine months before briefs were filed in this case.

state policy would provide adequate prede-privation process, and that policy circum-scribes the discretion of state officials to act, a single act of a state official—even a high-ranking state official—that violates that established policy is random and unau-thorized from the state's perspective. See 910 F.2d at 1400–03.

Schafer's action in this case was random and unauthorized from the state's perspec-tive. Wisconsin law circumscribed any dis-cretion Schafer might have had over the decision to reduce Clifton's benefits. Clif-ton does not dispute that Wisconsin law, if followed, would have afforded him a hear-ing before his benefits were reduced. The state expressly told Schafer (through An-drews) not to reduce Clifton's benefits pending the outcome of his hearing. The fact that Schafer could have told Andrews to remove the computer code proves (at most) only that Schafer violated Wisconsin law. Clifton does not contend that Schafer had the authority to establish binding state policy on when to reduce benefits, or that the state regularly allowed the heads of county Human Service Departments to flout the hearing requirement, or even that the state had any reason to know that those officials were likely to flout the hear-ing requirement. Cf. id. at 1401. The record in this case reveals only an isolated violation of established state policy; under *Easter House*, that is random and unautho-rized conduct.

That brings us to the question of wheth-er Wisconsin provided Clifton an adequate post-deprivation remedy. There is little doubt Wisconsin provided an adequate rem-edy in this case. Clifton was given a prompt administrative hearing, and his lost benefits were restored in full a little more than two months after they were taken away. Clifton complains that he could not receive damages through the administra-tive process as he could in a § 1983 suit, but the Supreme Court has held "that the fact that an injured party 'might not be able to recover under [the state law] reme-dies the full amount that he might receive in a § 1983 action is not ... determinative of the adequacy of state remedies.'" *Id.*

at 1406 (quoting *Hudson*, 468 U.S. at 535, 104 S.Ct. at 3204–05).

◼ Clifton argues that even if Schafer's action was random and unauthorized, *Par-ratt* and its progeny do not bar his § 1983 suit because their analysis does not extend to the deprivation of substantive rights. See *Tavarez v. O'Malley*, 826 F.2d 671, 675 (7th Cir.1987). Clifton argues that by re-ducing his benefits Schafer violated the Fourth Amendment's prohibition against unreasonable seizures and the Fifth Amendment's takings clause. Previous de-cisions from this court dispose of both of these arguments. In *Soldal v. County of Cook*, 942 F.2d 1073 (7th Cir.1991) (en banc), *cert. granted*, —— U.S. ——, 112 S.Ct. 1290, 117 L.Ed.2d 514 (1992), we held that a plaintiff's complaint that a deputy sheriff conspired with private parties to unlawfully disconnect and tow away a trail-er from a trailer park—that is, literally to "seize" the trailer—did not state a Fourth Amendment claim. In *Soldal*, we ex-plained that "the Fourth Amendment does not provide a remedy for a pure deprivation of property rights," *id.* at 1078, but instead only protects interests in privacy and liber-ty. The due process clause (and perhaps in some circumstances, the takings clause) regulates deprivations of property. See *id.* at 1078–80. Clifton is complaining about a "pure deprivation of property rights," that is, a deprivation of money he was entitled to. Like the plaintiff in *Soldal*, Clifton has not stated a Fourth Amendment claim. In fact, Clifton's claim is less susceptible of being characterized as a Fourth Amend-ment claim than Soldal's. In *Soldal*, it was at least arguable that the defendants vio-lated Soldal's privacy interests since the property seized was Soldal's home, proper-ty commonly recognized as a bastion of personal privacy. Moreover, unlike the de-fendants in *Soldal*, Schafer did not literally "seize" anything from Clifton; he merely had a code entered into a computer that caused the county to issue welfare checks for lesser amounts to Clifton.

◼ Clifton also does not have any claim under the Fifth Amendment takings clause. In *Schroeder v. City of Chicago*, 927 F.2d

957 (7th Cir.1991), we rejected application of the takings clause to similar facts. In *Schroeder,* the plaintiff argued that he was entitled to immediate receipt of a disability benefit and that the defendants machinations which resulted in delaying his receipt of the benefit deprived him of his property right to immediate receipt. With regard to any possible taking claim, we held that even assuming that the plaintiff had a property interest in receiving his benefit immediately,

> [t]here is no suggestion that [the delay] could be fitted within the boundaries of the takings clause, even broadly construed. We add the practical consideration that Schroeder did not need the aid of a federal court to protect him.... His state remedies were adequate. There is no need to invent a constitutional one.

*Id.* at 961–62. Clifton, like *Schroeder,* is complaining about a delay in receiving money that he was entitled to earlier. As in *Schroeder,* Clifton's state law remedies were adequate. Clifton may not bypass the Fourteenth Amendment jurisprudence developed in *Parratt* and its progeny by recasting his due process claim as a Fourth Amendment or takings claim. A person who claims to have been deprived of property by the state without due process must use the judicial remedies the state has provided. *Soldal,* 942 F.2d at 1077. There is neither a takings nor a Fourth Amendment claim here.

## II.

■ Clifton also contends that by reducing his benefits Schafer violated 45 C.F.R. § 205.10(a)(6)(1) which provides that a state AFDC plan must provide that if a recipient facing a reduction or termination of benefits requests a hearing,

> [a]ssistance shall not be suspended, reduced, discontinued or terminated (but is subject to recovery by the agency if its action is sustained), until a decision is rendered after a hearing....

This regulation implements 42 U.S.C. § 602(a)(4), which provides that a state plan must "provide for granting an opportunity for a fair hearing ... to any individual whose claim for aid to families with dependent children is denied or is not acted upon with reasonable promptness." Clifton argues that § 205.10(a)(6)(i) creates a right that he may enforce under § 1983, which provides a federal judicial remedy for "the deprivation of any rights, privileges, or immunities, secured by the Constitution and laws...."

In *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that § 1983 provides a remedy for violations of federal statutes as well as the Constitution. However, violation of a federal statute is not by itself sufficient to support a § 1983 action. Since § 1983 "speaks in terms of 'rights, privileges, or immunities,' not violations of federal law," *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989), we must determine whether § 205.10(a)(6)(i) creates a right that Clifton may enforce in his § 1983 action. Making this determination requires us to analyze § 205.10(a)(6)(i) to determine the precise scope of any enforceable right that § 205.10(a)(6)(i) might create.

The Supreme Court has recently spoken on the issue of when a federal statute confers a right enforceable through § 1983. *Suter v. Artist M.,* —— U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992) involved a suit premised on a violation of the Adoption Assistance and Child Welfare Act of 1980, which established a program for reimbursing states for expenses incurred in administering foster care and adoption services. *Id.,* 112 S.Ct. at 1363. The Act provided that for a state to receive payment, it must have a plan approved by the Secretary of Health and Human Services, and that the plan must provide, among other things, that "in each case, reasonable efforts will be made" to prevent the need to remove a child from his home or to make it possible for a removed child to return to his home. See *id.* at 1364 (quoting 42 U.S.C. § 671(a)(15)). A class of plaintiffs sued the Illinois Department of Children and Family Services and two of its administrators, alleging that the defendants violated

§ 671(a)(15) by failing to make reasonable efforts to prevent removal of children from their homes and to reunite children with their families after removal had occurred.

The Supreme Court held in *Artist M.* that § 671(a)(15) did not create a right enforceable under § 1983. The Court based its analysis, in large part, on the fact that § 671(a)(15) required only that a state have a plan providing that the state will make "reasonable efforts" to prevent removing a child from his home or to make it possible to return a removed child to his home. See 112 S.Ct. at 1367, 1369. Nothing in the Adoption Act placed any other specific requirement on the states or defined what "reasonable efforts" might entail. *Id.* at 1367–69.

Based on the Court's analysis in *Artist M.*, we agree with the district court that § 205.10(a)(6)(i) creates no right enforceable under § 1983 in this case. Section 205.10(a)(6) implements the portion of the Social Security Act setting forth the required contents of state plans, and is itself part of a list of required contents for state plans. Section 205.10(a)(6) in terms does not explicitly require continuing reimbursement pending a hearing; rather, like the statutory provision at issue in *Artist M.*, it requires only that the state adopt a plan that provides "for a system of hearings under which" a recipient will continue to receive full benefits pending the outcome of a hearing.

If § 205.10(a)(6) creates any enforceable right, it is only the right to insist that Wisconsin adopt a plan meeting the regulation's requirement. Clifton does not dispute that Wisconsin's plan meets the regulation's requirement by providing that benefits shall not be terminated or reduced pending a hearing. Cf. *Artist M.*, 112 S.Ct. at 1367. Therefore, Clifton has no right enforceable under § 1983 in this case.

It is true that in *Artist M.*, the Supreme Court noted that the requirement of "reasonable efforts" was a somewhat nebulous requirement that would vary from case to case, and that neither § 671(a)(15) nor its implementing regulations lent any more precision to the term or gave the states further guidance as to what "reasonable efforts" entailed. See *Artist M.*, 112 S.Ct. at 1368–69. The Court did this to distinguish *Artist M.* from *Wilder v. Virginia Hosp. Ass'n.*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). *Wilder* involved the Boren Amendment to the Medicaid Act, 42 U.S.C. § 1396a(a)(13)(A), which like the Adoption Act in *Artist M.* and § 205.-10(a)(6)(i) in this case, required states to submit a plan to be eligible for federal funding. The plan had to provide, in part, that the state would provide for payments to providers "through the use of rates … which the state finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate.…" See 496 U.S. at 502–03, 110 S.Ct. at 2513–14 (quoting 42 U.S.C. § 1396a(a)(13)(A)). In *Wilder*, hospitals in Virginia sued the state under § 1983 to challenge Virginia's method for setting reimbursement rates, alleging that Virginia's rates were not "reasonable and adequate." The Court held that the Boren Amendment required the states to adopt reasonable and adequate rates, and that this requirement conferred a right on health care providers enforceable under § 1983. In reaching that conclusion, the Court relied in part on the fact that "the statute and regulations set forth in some detail the factors to be considered in determining the methods for calculating rates." *Artist M.*, 112 S.Ct. at 1368 (citing *Wilder*, 496 U.S. at 519 n. 17, 110 S.Ct. at 2522 n. 17); see also *Wilder*, 496 U.S. at 519, 110 S.Ct. at 2522.

The requirement that a state hold a hearing before it reduces AFDC benefits, unlike the requirement that a state use "reasonable efforts" to properly place foster children, is not nebulous and variable from case to case. Still, *Wilder* is not inconsistent with a holding that § 205.10(a)(6) confers, if anything, only a right to a state plan complying with the regulation. *Wilder* was a suit over the legality of the state plan: the plaintiffs in *Wilder* alleged that the state *plan* itself violated the Boren Amendment because the rates were not reasonable and adequate. The plaintiffs sought, among other things, an order requiring the state to promulgate a new plan

providing new rates. See *Wilder*, 496 U.S. at 503–04, 110 S.Ct. at 2514–15. *Wilder*'s discussion concerning the detailed language used in the Boren Amendment and its regulations came in the context of determining whether the Boren Amendment required state plans to actually provide reasonable and adequate reimbursement rates. In answering "yes" to that question, *Wilder* held simply that health care providers could sue to enforce their right to a state plan that did not violate the Boren Amendment; it did not hold that providers had a right to challenge any deviation the state might make from a plan that did comply with federal law. Unlike the plaintiffs in *Wilder*, Clifton is suing because of an isolated violation of a concededly legal plan. As § 205.10(a)(6) gives him only the right to a plan that complies with the regulation's requirements, Clifton has no right to sue under § 1983 in this case.

For the reasons set forth above, the district court's judgment is

AFFIRMED.