HCMF CORPORATION,
et al. Plaintiffs,

v.

James GILMORE, et al. Defendants.

Civil Action No. 98–0297–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Nov. 9, 1998.

Robert Thomas Adams, Richard Cullen, Earle Duncan Getchell, Jr., Thomas J. Stallings, Robert L. Hodges, McGuire, Woods, Battle & Boothe, Richmond, VA, for Plaintiffs.

Edward Meade Macon, Mark L. Earley, William Henry Hurd, Gregory E. Lucyk, Siran S. Faulders, Office of the Attorney General, Richmond, VA, for Defendants.

### Memorandum Opinion and Order

WILSON, Chief Judge.

Plaintiffs, affiliated owners or operators of seven nursing facilities in Virginia (collectively "Heritage"), bring this action pursuant to 42 U.S.C. § 1983 (1994) for alleged violations of the reimbursement standards purportedly prescribed by 42 U.S.C. § 1396a(a)13 of the Medicaid Act, for failing to follow Medicaid statutes and regulations before adopting a new reimbursement policy, and for alleged violations of their Fourteenth Amendment rights to due process and equal protection.[1] They name as defendants James Gilmore, the Governor of Virginia; Claude Allen, the Secretary of Virginia's Department of Health and Human Resources; Robert Lauterberg, the Director of Virginia's Department of Medical Assistance Services ("DMAS")—the State agency responsible for administering Virginia's Medicaid system; and DMAS and its board members (collectively "Defendants"). Heritage seeks a declaratory judgment under 28 U.S.C. § 2201 declaring that Defendants "have deprived plaintiffs of federal rights under color of state law" and an injunction requiring Defendants "to comply with Federal law," reimburse Heritage "adequately under 42 U.S.C. § 1396a(a)13," revise Heritage's "interim plant rates," and reimburse Heritage "the difference between the interim plant rates implemented by defendants and the interim plant rate allowable under Federal and State law for fiscal years 1994–1997." (Compl. at 22–23.) Defendants move to dismiss on several grounds. They maintain the Eleventh Amendment to the United States Constitution bars the suit, that the suit is not ripe, that the *Younger* and *Colorado River* abstention doctrines require dismissal, and that Heritage's due process claim is not sustainable under *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).[2] The court concludes (1) that the suit is ripe, (2) that abstention is not warranted, (3) that the Eleventh Amendment precludes the court from exercising jurisdiction over Heritage's claims that Defendants violated the reimbursement standards purportedly prescribed by the Medicaid Act and failed to follow Medicaid statutes and regulations, and (4) that Defendants did not violate Heritage's rights to procedural due process. Finally, the court reserves judgment on Heritage's equal protection claim because the parties have not addressed the merits of that claim.

### I.

"Medicaid is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals." *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). The Medicaid Act requires participating States to comply with certain requirements imposed by the Act and implementing regulations promulgated by the Secretary of Health and Human Services (the "Secretary"). *See id.* To participate, a state must submit a proposed plan for medical assistance that contains a comprehensive statement describing the nature and scope of the State's Medicaid program and have that plan approved by the Secretary. *See id.* Among other things, the plan must include "a scheme for reimbursing health care providers for the medical services provided to needy individuals." *Id.* Before

---

1. Plaintiffs are HCMF Corporation, Heritage Hall Holding Limited Partnership, Heritage Hall XIII, HCMF Partnership VI, HCMF VI Addition Limited Partnership, and HCMF XV Partnership. Plaintiffs own or operate seven nursing facilities: Heritage Hall–Blackstone, Heritage Hall–Dillwyn, Heritage Hall–King George, Heritage Hall–Big Stone Gap, Heritage Hall–Charlottesville, Heritage Hall–Front Royal, and Heritage Hall–Nassawadox.

2. Heritage concedes that the Eleventh Amendment bars it from pursuing DMAS in federal court.

its repeal in 1997, the Boren Amendment to the Medicaid Act required each state plan to establish payment and reimbursement rates that were "reasonable and adequate" to cover the costs that must be incurred by "efficiently and economically operated facilities." Omnibus Budget Reconciliation Act of 1980, Pub.L. No. 96–499, § 962(a), 94 Stat. 2599, 2650 (1980) (codified at 42 U.S.C. § 1396a(a)(13)) (repealed 1997). In 1997, however, Congress repealed the Boren Amendment and expressly provided that the repealed Boren Amendment standard is not applicable to payments for health provider services rendered after October 1, 1997. Balanced Budget Act of 1997, Pub.L. No. 105–33, § 4711(a)(1), 111 Stat. 251, 507–08 (1997) (to be codified at 42 U.S.C. § 1396a(a)(13)). The Balanced Budget Act of 1997 left to the states entirely the formulation of new standards, prescribing only a public notice process for participating states to follow in setting those standards. Virginia has not amended its plan to set new standards.

In 1993, DMAS began notifying the seven Heritage nursing care facilities that those facilities had received excess reimbursement for plant costs. DMAS had reimbursed those facilities based on the interest rate on bonds the facilities obtained from local industrial development authorities rather than on their Federal Housing Administration ("FHA") mortgage interest rates. According to DMAS, an earlier review revealed a significant relationship between the facilities' FHA mortgage obligations and the industrial development authority bonds secured by those mortgages. DMAS claims it discovered that those facilities were able to structure the transactions to retire fully their bond indebtedness before the expiration of their FHA mortgages. Their bond rate, therefore, according to DMAS, more accurately reflected their plant costs. Consequently, DMAS notified the facilities by "Notices of Program Reimbursement" that it would seek reimbursement for excess plant costs claimed through 1993 and would adjust their future reimbursement rates.

Virginia's administrative appeals process, which is augmented by Va.Code Ann.

§§ 32.1–325.1, 9–6.14:1 to 6:14:21 (Michie 1997 & 1993), is detailed in Virginia's Medicaid plan. *See Beverly Health & Rehabilitation Servs., Inc. v. Metcalf,* 24 Va.App. 584, 484 S.E.2d 156, 159–60 (Va.Ct.App.1997). Upon receiving a "Notice of Program Reimbursement," a health care provider can request an "Informal Fact Finding Conference" to review the initial decision. *See id.* If the provider remains dissatisfied following that initial review, the provider can appeal the decision to a hearing officer and receive a *de novo* hearing. *See id.* The hearing officer is required to make a recommendation to the Director of DMAS (the "Director"), who can accept or reject the hearing officer's recommendation. *See id.* The Director is required, however, to defer to the hearing officer's findings that are "explicitly based on the demeanor of witnesses." *Id.* The provider can appeal the Director's final decision to the state Circuit Court, which owes deference to the agency's interpretation of its own rules and regulations, *see id.,* and either of the parties can appeal the Circuit Court's decision to the Virginia Court of Appeals.

The seven nursing care facilities in this case have appealed DMAS's initial decision, and all seven appeals are awaiting an informal fact-finding conference.

## II.

■ The court requested the parties to address the question of whether this case is ripe because its resolution rests upon contingent future events. DMAS may, on further consideration, decide that its initial decision was wrong and that Heritage is entitled to the reimbursement it seeks, or in the event of an unfavorable decision, Heritage could have Virginia's state courts review the matter. The court now concludes that the case is ripe despite the availability of additional state administrative and judicial remedies. *Talbot v. Lucy Corr Nursing Home,* 118 F.3d 215 (4th Cir.1997), is instructive.

The plaintiff in *Talbot* brought a § 1983 action alleging a violation of the nursing care facility resident rights provisions of the Medicare Act. *See id.* at 216 (alleging a violation of 42 U.S.C. § 1395i–3(c)). The District Court dismissed for nonexhaustion. *See id.*

at 218. The Fourth Circuit reversed, expressly agreeing with and relying on the reasoning of the Eleventh Circuit in *Alacare, Inc.–North v. Baggiano*, 785 F.2d 963 (11th Cir.1986), which held that plaintiffs are not required to exhaust state administrative remedies in § 1983 suits to enforce the provisions of the Medicaid Act. *See id.* at 969. "In holding against an exhaustion requirement, the *Alacare* court rejected the notion that the existence of a federally-mandated state administrative review process was sufficient to evidence Congress' intent that exhaustion of those remedies should be required before permitting a § 1983 claim." *Talbot*, 118 F.3d at 220. *Talbot*'s agreement with and reliance on *Alacare* makes it clear that in the Fourth Circuit, assuming *arguendo* that *Wilder* had not already made it clear, that exhaustion is not required.[3]

Although this court questioned the ripeness of Heritage's suit, it did so because of the availability of further state administrative review. Thus, though the court couched its inquiry in terms of ripeness, its analytical basis was indistinguishable from the exhaustion analysis previously rejected by the Fourth Circuit and arguably the Supreme Court. Accordingly, the court will not dismiss Heritage's suit on ripeness grounds.

## III.

Defendants request the court to abstain under the *Younger* and *Colorado River* abstention doctrines in light of pending administrative proceedings. The court finds neither abstention doctrine applicable.

Under the *Younger* abstention doctrine, which takes its name from the seminal case of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), federal courts should abstain "whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237–38, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). There are three prerequisites to *Younger* abstention: (1) there must be an ongoing state "judicial" proceeding, (2) the proceeding must implicate important state interests, and (3) there must be an adequate opportunity to present the federal claims in the state proceeding. *See Employers Resource Management Co. v. Shannon*, 65 F.3d 1126, 1134 (4th Cir.1995). "[A]lthough *Younger* involved criminal proceedings, the Supreme Court has since extended abstention principles into noncriminal judicial proceedings, and into state administrative proceedings that are judicial in nature." *Id.* at n. 7 (citations omitted). Administrative proceedings fail to satisfy the "judicial" proceedings requirement if they lack "trial-like trappings." *Telco Communications, Inc. v. Carbaugh*, 885 F.2d 1225, 1228 (4th Cir.1989). "Fact finding conferences" under the Virginia Administrative Process Act lack the requisite "trial-like trappings," and, therefore, do not qualify as judicial proceedings for purposes of *Younger* abstention. *See id.* Because state proceedings have not advanced beyond the fact-finding conference stage, *Younger* abstention is not warranted.

*Colorado River* abstention, which takes its name from *Colorado River Water*

---

**3.** In an unpublished decision, *McGhee v. Director, Dep't of Mental Health & Hygiene*, 153 F.3d 721, No. 97–2588, 1998 WL 403329, at *1 (4th Cir. July 7, 1998), the Fourth Circuit found that a plaintiff's Medicaid claim was not ripe because of the possibility that she would receive benefits in a pending state court action to review the state Medicaid agency's denial. *See id.* at *3, 153 F.3d 721. The Fourth Circuit remanded the case with instructions to stay it pending resolution of the state Court litigation. *See id.* at *4, 153 F.3d 721. Because it was possible that the plaintiff would recover in the state court action, the injury remained contingent upon future events. As the court saw it "staying any decision pending final state court action is consistent with the dual federal-state nature of the Medicaid system and helps preserve the states' important role in administering the program." *Id.* at *3, 153 F.3d 721. Because the decision is unpublished, however, it is nonbinding, and even though this court agrees with much of its broad reasoning, it is distinguishable because McGhee had already filed a state court action challenging the denial of Medicaid benefits. In contrast, in the present case Heritage has not filed a parallel state court action. Although a strong argument could be made that the absence of a state court challenge makes this case even less ripe than *McGhee* for federal court action, precedent precludes such a contention.

*Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), permits a district court to abstain in the interest of " '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Id.* at 817, 96 S.Ct. 1236 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). One of the prerequisites to *Colorado River* abstention, however, is the pendency of a duplicative, parallel state-court proceeding. *See McLaughlin v. United Va. Bank,* 955 F.2d 930, 931 (4th Cir.1992). A fact-finding conference falls far short of qualifying as a duplicative, parallel state-court proceeding. *Colorado River* abstention is, therefore, inappropriate.

Accordingly, the court will not abstain.

## IV.

■ For its first claim, Heritage alleges that Defendants have adopted a reimbursement policy that violates the standard required by 42 U.S.C. § 1396a(a)13. The court finds that Heritage cannot maintain the claim in federal court because the Eleventh Amendment precludes the declaratory and injunctive relief Heritage seeks. First, Heritage cannot obtain declaratory or injunctive relief governing accrued reimbursement obligations because the Eleventh Amendment prohibits retrospective relief against the State. Second, Heritage cannot obtain declaratory or injunctive relief governing future reimbursement obligations because Congress repealed the Boren Amendment, and the standard governing Virginia's future reimbursement obligations is a State standard not subject to suit in federal court.

■ Each of the individual defendants is sued in his or her official capacity.[4] "[A]n official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.' " *Hafer v. Melo,* 502 U.S. 21, 26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (quoting *Will v. Michigan Department of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). In official capacity suits against state officials, the individual officials are only nominal defendants. The state is the real, substantial party in interest. Because Virginia's Eleventh Amendment immunity "extends to state officials when they are merely the nominal defendants and 'the state is the real, substantial party in interest,' " this court has no jurisdiction over this claim unless it is sustainable under the narrow exception of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *See Booth v. Maryland,* 112 F.3d 139, 142 (4th Cir.1997) (quoting *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945)). *Ex Parte Young,* however, provides only a limited exception to Eleventh Amendment immunity applicable when a plaintiff alleges a continuing violation of federal law *and* seeks prospective rather than retrospective relief. *See Republic of Paraguay v. Allen,* 134 F.3d 622, 627 (4th Cir.1998). Because there is no possibility of a continuing violation actionable in federal court for services rendered on or after October 1, 1997 *and* the relief sought is retrospective in effect, the Eleventh Amendment precludes this court from hearing Heritage's claim that DMAS's reimbursement "policy" violates the standard required by § 1396a(a)13.

There is no possibility of a continuing violation of federal law for services rendered on or after October 1, 1997 because Congress repealed the Boren Amendment to the Med-

---

4. The complaint does not specifically state that the individual defendants are sued in their official capacities but the complaint does not request damages, the hallmark of a personal capacity suit, and, instead, seeks relief that could be obtained only from an official. Moreover, Heritage never argues that the individual defendants are personally liable. As the Supreme Court has recognized: "[i]n many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both.

'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Brandon v. Holt,* 469 U.S. 464, 469, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)). From the course of these proceedings, this is clearly and singularly an official capacity suit. Indeed, given the legally disputable nature of Heritage's claims, a personal capacity suit would meet a formidable qualified immunity plea.

icaid Act—the provisions of § 1396a(a)13 that required states to adopt "reasonable and adequate" reimbursement standards—and expressly provided that the standards of the repealed Boren Amendment are not applicable to payments for services rendered after that date. Balanced Budget Act of 1997, Pub.L. No. 105–33, § 4711(a)(1), 111 Stat. 251, 507–08 (1997) (to be codified at 42 U.S.C. § 1396a(a)(13)). Any relief, whether styled declaratory or injunctive, purporting to govern reimbursement obligations for services rendered before that date necessarily would be a retrospective award against the state, which the Eleventh Amendment precludes in federal court.[5] Heritage's efforts to characterize the relief it requests as prospective are unavailing. There is a substantial difference between declaratory and injunctive relief governing reimbursement obligations that will accrue in the future, as opposed to declaratory and injunctive relief governing reimbursement obligations that have already accrued. The former is prospective and within the *Ex Parte Young* exception. The latter is plainly retrospective, regardless of how Heritage characterizes it, because it establishes liability for past conduct and the Eleventh Amendment precludes it. *See Papasan v. Allain,* 478 U.S. 265, 281, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (holding that the Eleventh Amendment precludes claim characterized as breach of a continuing obligation to comply with trust obligations); *Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (holding that the Eleventh Amendment precludes a claim characterized as a continuing withholding of accrued benefits).[6]

Since October 1st, Virginia has been responsible for setting its own reimbursement standards. Heritage correctly argues that because DMAS has not promulgated new reimbursement regulations, Virginia's "current published regulations carry forward the 'efficiency and economy' reimbursement standard required by the repealed Boren Amendment." (Pls.' Mem. Opp'n Defs.' Mot. Dismiss at 7.) It follows, according to Heritage's argument, that it is seeking prospective relief permitted by *Ex Parte Young.* The argument misses the mark.

Heritage is seeking prospective declaratory and injunctive relief that would require Virginia to apply its reimbursement standard to future services, and had Congress not repealed the Boren Amendment, this court would arguably have jurisdiction to grant prospective relief in accordance with the Supreme Court's holding in *Wilder,* 496 U.S. at 498, 110 S.Ct. 2510. *But see Clifton v. Schafer,* 969 F.2d 278, 283–85 (7th Cir.1992) (finding no right to sue under § 1983 for "an isolated violation of a concededly legal plan."). Congress repealed the Boren Amendment, however, and the reimbursement standard governing services rendered on or after October 1st, although the same standard as before, is now a state standard, not a federal standard subject to suit under § 1983. There is no federal standard. The Balanced Budget Act of 1997 replaced the repealed Boren Amendment standard with a public notice process for states to follow in setting payment rates. There can be but one reasonable conclusion from Congress's action: Congress precluded a right of action under § 1983 for reimbursement claims for services rendered on or after October 1st.[7]

---

5. *Accrued obligations, however, are preserved. See* 1 U.S.C. § 109 (1994). Thus, Heritage may seek to recover based on accrued obligations in state court.

6. *CSX Transp. Inc. v. Board of Public Works,* 138 F.3d 537 (4th Cir.1998) is distinguishable. In that case the Fourth Circuit concluded that the Eleventh Amendment did not preclude an injunction against the levying or collection of a tax that had already been assessed but not collected. Because a postassessment, precollection injunction does not require the state to refund or reimburse the plaintiff, the Eleventh Amendment does not preclude it. In contrast, when declaratory or injunctive relief operates retrospectively, as it

would in the present case, and requires the state to refund or reimburse for obligations that have already accrued, *Ex Parte Young* provides no exception to the Eleventh Amendment's bar.

7. It is not surprising that the legislative history to the Balanced Budget Act is consistent with the court's conclusion that Congress intended to preclude a right of action under § 1983 based on the adequacy of the state's rates. *See, e.g.,* H.R.Rep. No. 105–149, at 1230 (1997) ("It is the Committee's intention that, following enactment of this Act, neither this nor any other provision of Section 1902 [42 U.S.C. § 1396] will be interpreted as establishing a cause of action for hospitals and

"In order to seek redress through § 1983....a plaintiff must assert the violation of a federal *right,* not merely a violation of federal *law." Blessing v. Free-stone,* 520 U.S. 329, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997). In determining whether the plaintiff has a federal right, the court must carefully parse the language of the particular provision the plaintiff claims as the source of that right. *See id.* In *Wilder,* the Supreme Court carefully parsed the language of the Boren Amendment and identified three factors that led it to conclude that Medicaid providers had substantive, enforceable rights to "reasonable and adequate" rates under that amendment's "reasonable and adequate" rate provision. First, the provision was intended to benefit the putative

plaintiffs; second, the provision imposed a "binding obligation" rather than expressed a "congressional preference"; and third, the plaintiffs' interests were not "too vague and amorphous" as to be beyond the competence of the judiciary to enforce. *Wilder,* 496 U.S. at 509, 110 S.Ct. 2510; *see Blessing* 117 S.Ct. at 1359 (1997).

With the repeal of the Boren Amendment nothing remains that remotely resembles a federal right to reasonable and adequate rates. There is no federal statutory rate language to parse. There is only a state standard.[8] It follows that there can be no prospective relief under § 1396a(a)(13) and that the court must dismiss Heritage's reimbursement claim for lack of federal jurisdiction.[9]

---

nursing facilities relative to the adequacy of the rates they receive.").

Moreover, because the standards are state standards, the Eleventh Amendment would preclude the exercise of ancillary jurisdiction even over a claim for purely prospective relief. *See Pennhurst State Sch. Hosp. v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law....We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law."); *see also ANR Pipeline Co. v. Lafaver,* 150 F.3d 1178, 1188–90 (10th Cir.1998) (holding that *Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) and *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) "mark a significant narrowing of the scope of the *Ex Parte Young* doctrine" to preclude prospective equitable relief when that relief would intrude into "core aspects of a state's sovereignty.").

8. "[A]lthough § 1983 has been used as a vehicle to enforce federal rights embodied in federal regulations as well as statutes, it would be quite remarkable for Congress to federalize a whole body of unspecified state rules and regulations and thereby make the state's enforcement of its own standards a federal right that parties could pursue through private § 1983 actions." *Evelyn V. v. Kings County Hosp. Ctr.,* 956 F.Supp. 288, 296 (E.D.N.Y.1997) (citation omitted).

9. Defendants have also argued that even if Congress had not repealed the Boren Amendment, the court would not have had jurisdiction over the claim because the claim, when stripped of excess rhetoric, is essentially a claim that the state agency misapplied the state plan and regulations, not a claim that the state plan and regulations conflict with federal law. According to

the Defendants, the claim that DMAS has misapplied Virginia's Medicaid plan and regulations is not actionable under § 1983. Defendants contend that *Wilder,* on which Heritage relies heavily, gives no support to the notion that the misapplication of a valid state Medicaid plan or regulation is actionable under § 1983. They argue that "*Wilder* held simply that health care providers could sue to enforce their right to a state plan that did not violate the Boren Amendment; it did not hold that providers had a right to challenge any deviation the state might make from a plan that did comply with federal law." *Clifton v. Schafer,* 969 F.2d 278, 285 (7th Cir. 1992). As they view it, Congress did not intend to convert claims of administrative error in the application of state Medicaid plans and regulations into federal claims, a point they believe the recent case of *Concourse Rehabilitation & Nursing Ctr. Inc. v. Wing,* 150 F.3d 185 (2d Cir. 1998), underscores.

In that case, Concourse, a nursing care facility, sued the Commissioners of the New York State Department of Health and the Department of Social Services under § 1983 alleging that in withholding reimbursement payments, the Commissioners and the Department of Health "violated federal law by failing to comply with state regulations promulgated under the federal Medicaid Act, 42 U.S.C. § 1396a." *Id.* at 186. Although it did not bring its claim under the Boren Amendment, Concourse argued that *Wilder's* logic, which led the Supreme Court to conclude that the Boren Amendment created a right enforceable by health-care providers under § 1983, extended to suits to enforce § 1396a(a)(1). *See id.* at 188. Section 1396a(a)(1) mandates "that a state plan provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them," and § 1396c authorizes the Secretary to withhold funds from a state "when either the State plan or

## V.

For its second claim, Heritage maintains that DMAS violated § 1396a(a)(13) and implementing regulations when it adopted its new reimbursement policy without making the requisite findings or without giving the requisite assurances to the Secretary concerning the effect of the policy on efficient and economically operated nursing facilities.[10] Defendants respond that DMAS began reimbursing Heritage for plant costs based on the interest rate on bonds obtained from its local Industrial Development Authority rather than on its FHA mortgage interest rate, not because DMAS adopted a new policy, but because DMAS's review of Heritage's proposed refinancing in about 1991 revealed a significant relationship between Heritage's FHA mortgage obligations and its Industrial Development Authority bonds secured by those mortgages. The Defendants claim that DMAS discovered that Heritage was able to structure the transactions to retire fully the bond indebtedness before the expiration of the FHA mortgage. The bond rate, therefore, more accurately reflected Heritage's plant costs. According to Heritage, however, DMAS has been aware of its financing arrangements longer than DMAS admits.

Whether or not DMAS's interpretation of pertinent regulations is new, one point is clear, as Heritage recognizes. "Since repeal of the Boren Amendment, DMAS has not promulgated new reimbursement regulations. Thus, the current published regulations carry forward the 'efficiency and economy' reimbursement standard required by the repealed Boren Amendment." (Pls.' Mem. Opp'n Defs.' Mot. Dismiss at 7.) Heritage's second claim, therefore, is nothing more than a dispute about whether DMAS has properly applied or is properly applying the regulations. As such, the court should dismiss the claim on at least two grounds. First, as the court has already held, recovery in federal court for past applications of the now repealed Boren Amendment is precluded by the Eleventh Amendment because it is a thinly veiled attempt to obtain damages from the state. Second, nothing in the Medicaid Act and implementing regulations even remotely suggests that an administering state agency's application and interpretation of its plan and regulations are subject to the procedures applicable to plan amendments. *See* 42 C.F.R. §§ 447.250, 447.253, 447.256 (1997). In fact, the notion is stunningly impracticable. Moreover, if DMAS's interpretation of Virginia's Medicaid plan and regulations is amiss, the Virginia courts, which routinely review such matters, *see, e.g., Life Care Ctr. v. Department of Med. Assistance Servs.*, 25 Va.App. 513, 489 S.E.2d 708 (Va.Ct.App. 1997); *Beverly Health*, 484 S.E.2d at 156; *Fralin v. Kozlowski*, 18 Va.App. 697, 447 S.E.2d 238 (Va.Ct.App.1994), are free to correct it. Accordingly, the court will dismiss Heritage's second claim.

## VI.

For its third claim, Heritage alleges that DMAS violated its Fourteenth Amendment right to procedural due process when DMAS adopted and applied a new reimbursement plan without notice and a hearing. This claim is essentially the second claim repackaged as a due process violation. Defendants maintain that the court should dismiss the claim because DMAS has not "adopted and applied" a new plan and because the claim is unsustainable under the reasoning of *Parratt v. Taylor*, 451 U.S. at 541–43, 101 S.Ct. 1908. The court agrees

the administration Secretary of that plan fails to comply with Section 1396a." *Id.* Pursuant to that authority, the Secretary has announced that "[a] question of noncompliance in practice may arise from the State's failure to actually comply with a Federal requirement, regardless of whether the plan itself complies with that requirement." *Id.* (quoting 42 C.F.R. § 430.35(c)). Concourse argued that, following *Wilder's* reasoning, those provisions in combination establish a "federal right to enforce compliance with an approved State plan." *Id.* The court, however, rejected reading § 1396a(a)(1) so broadly because it would "potentially expand [federal court] jurisdiction to every claim that a state agency has in an individual matter misapplied or misinterpreted a State plan," a result Congress did not intend. *Id.*

Defendants' raise a substantial issue, but its resolution is unnecessary given the Eleventh Amendment's bar. The court, accordingly, declines to decide it.

10. Heritage also claims in its brief that DMAS adopted its new reimbursement policy without notice and an opportunity to be heard.

that the claim fails because DMAS has not adopted a new plan but has simply interpreted and applied the existing plan. If DMAS has incorrectly applied the plan, Virginia's courts can correct the error. DMAS's actions, however, are not constitutionally significant. *See PFZ Properties, Inc. v. Rodriguez,* 928 F.2d 28, 30–31 (1st Cir.1991) (refusing to "convert every departure from established administrative procedures into a violation of the Fourteenth Amendment"). Because the claim lacks constitutional merit, the court finds it unnecessary to consider whether application of the reasoning of *Parratt v. Taylor* would bar the claim.

## VII.

Finally, Heritage maintains that DMAS violated its Fourteenth Amendment right to equal protection by classifying without a rational basis "nursing facilities solely on the basis of the financing structure used to construct the nursing facilities." Defendants have not squarely addressed the claim. Although the likelihood of Heritage prevailing on such a claim absent impermissible motivation seems quite small because of the exceptionally wide latitude afforded the state in drawing economic distinctions, the court will afford the parties a brief opportunity to address the claim on its merits.

## VIII.

For the foregoing reasons, the court will dismiss Heritage's first and second claims for lack of federal jurisdiction, will enter judgment for defendants on Heritage's third claim, and will make no decision regarding Heritage's fourth claim until the parties have had the opportunity to address that claim on its merits.[11]

It is so **ORDERED.**

---

11. The court also will dismiss DMAS and Governor Gilmore as defendants in this case. The court dismisses DMAS because, as noted above, Heritage concedes that the Eleventh Amendment precludes it from pursuing DMAS in federal court. *See supra* note 2. The court dismisses Governor Gilmore because he has no "special relation" to the enforcement of Virginia's State Medical Assistance Services Plan, *see Ex Parte Young,* 209 U.S. at 157, 28 S.Ct. 441 (requiring a "special relation" between the state officer and the "particular statute alleged to be unconstitutional") and Heritage has named him as party simply because he is Governor of Virginia.