**MARYLAND COMMUNITY HEALTH SYSTEM, LLP**

v.

**Parris N. GLENDENING, Governor, State of Maryland**

**and**

**Georges Benjamin, M.D., Secretary, Maryland Department of Health and Mental Hygiene.**

**Civil No. JFM–99–1486.**

United States District Court, D. Maryland.

Oct. 4, 2000.

James L. Feldesman, Khatereh S. Ghiladi, Feldesman, Tucker, Leifer, Fidell & Bank, Washington, DC, for Plaintiff.

Elizabeth M. Kameen, Wendy A. Kronmiller, Office of Atty. General, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

MOTZ, District Judge.

The surviving count in this § 1983 action concerns whether Maryland must pay a particular federally imposed obligation to certain health centers with separate state funds, or whether it may continue to redirect funds designated for the managed-care organizations that serve the health centers. A related claim concerns whether Maryland may require the health centers to request the funds or whether it must pay them automatically. Both sides move for summary judgment on the merits of whether the state's payment method violates federal law. The defendants also move for summary judgment based on Eleventh–Amendment immunity.

### I.

Maryland Community Health System [MCHS], the plaintiff, is a partnership of certain federally qualified health centers [FQHCs] serving the poor. FQHCs have special burdens and rights under the Medicaid statute. 42 U.S.C.A. §§ 254b(j)(3)(F), 1396a(a)(13), 1396d(a)(2)(C) (West Supp.1999). Congress has made federal loan guarantees available to FQHCs in an effort to encourage them to establish their own managed-care organizations [MCOs]. 42 U.S.C.A. § 254b(d) (West Supp.1999). MCHS is a 50% owner of Priority Partners, an incorporated MCO.

Maryland has received a waiver of various Medicaid provisions in order to establish an experimental program requiring all recipients to enroll in managed-care organizations.

The Balanced Budget Act of 1997 amended Medicaid law to require that FQHCs receive 100% reimbursement of their "reasonable costs" in treating patients. 42 U.S.C.A. § 1396a(a)(13)(C) (West Supp.1999). A FQHC bills its managed-care organization for a percentage of its "reasonable costs," and the state is required to top the MCO's payments to the FQHC up to 100%. *Id.* Maryland requires FQHCs to request these supplemental funds. Md.Code Ann. Health–Gen. § 15–103 (Supp.1998). When a FQHC requests supplemental funds, Maryland takes the money away from state payments to the managed-care organization that works with the FQHC. *Id.* For a FQHC that owns a substantial percentage of its own managed-care organization, as the plaintiff does, access to supplemental funds is less of an asset, to say the least, than it would be if they were paid from another source.

## II.

The defendants move for summary judgment on the grounds that they are immune from suit under the Eleventh Amendment. The Eleventh Amendment bars suits against unconsenting states in federal court. *Ex parte Young* provides an exception to the general law, permitting prospective injunctive relief to correct an ongoing violation if the suit is brought against state officials in their official capacities. 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). "An allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction." *Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 281, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). A claimant must seek "prospective relief to end a state officer's ongoing violation of federal law." 521 U.S. at 288, 117 S.Ct. 2028 (O'Connor, J., concurring). Special limitations on the *Young* doctrine include the presence of a detailed congressional remedial scheme or a "special sover-

eignty interest[ ]." 521 U.S. at 261, 117 S.Ct. 2028 (special sovereignty); *Seminole Tribe v. Florida,* 517 U.S. 44, 74–76, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)(remedial scheme).

The *Young* exception is not always available for suits against state officials in their official capacities, even if the plaintiffs seek prospective injunctive relief. If the "action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." 521 U.S. at 277, 117 S.Ct. 2028, *quoting Ford Motor Co. v. Department of Treasury of Ind.,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). A suit for prospective relief may proceed, however, despite a "substantial ancillary effect on the state treasury." *Papasan v. Allain,* 478 U.S. 265, 278, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

MCHS asks the Court to enjoin the governor and secretary of health of Maryland from paying supplemental funds to federally qualified health centers (including MCHS's member organizations) with Medicaid funds that would otherwise be available to the managed-care organizations that work with those centers. MCHS further asks the Court to enjoin the defendants from requiring federally qualified health centers to request the supplemental funds.

The defendants do not challenge the prospective nature of the relief, nor the ongoing nature of the violation if one exists. They argue that the relief requested has a direct financial effect on the state treasury and that the Eleventh Amendment therefore bars it. In addition, they argue that the relief sought would force the state to alter and increase its budget, intruding on Maryland's special sovereignty interest under *Coeur d'Alene Tribe,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438, in appropriating its own funds.[1]

---

**1.** Defendants' Eleventh Amendment arguments rely on the assumption that the relief

sought would be expensive to the state trea-

The closest analogue in the Fourth Circuit's recent precedent to the case at bar sheds light on the defendants' financial-impact argument, but predates *Coeur d'Alene Tribe*'s introduction of special sovereignty interests. In 1994, the court found an Eleventh–Amendment challenge to an action by medical providers under the Medicaid statute to be "completely meritless." *Rehabilitation Ass'n of Va., Inc. v. Kozlowski*, 42 F.3d 1444, 1448 (4th Cir. 1994). The court upheld an injunction requiring the state to reimburse medical providers according to rates that were uniformly higher than those the state had been paying. 42 F.3d at 1449 n. 5. (Although Congress later changed the Medicaid statute to bar future suits claiming inadequate rates, *see HCMF Corp. v. Gilmore*, 26 F.Supp.2d 873, 875–76 (W.D.Va. 1998), MCHS does not currently challenge the adequacy of reimbursement rates.) The Fourth Circuit found that the request for prospective injunctive relief qualified for a *Young* exception although the relief would require the state to spend more money than it had previously spent.[2] The relief sought in *Rehabilitation Association* was if anything closer to a direct, not an ancillary, burden on the state treasury than the relief sought in the case at bar.[3] Unless subsequent decisions of the Supreme Court or Fourth Circuit have altered the law that this Court must apply, the financial aspect of the prospective relief that MCHA seeks should not foreclose the availability of a similar *Young* exception under Fourth Circuit precedent today.[4]

Since the Fourth Circuit decided *Rehabilitation Association*, the Supreme Court has analyzed the Eleventh Amendment repeatedly. *Seminole Tribe*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252; *Coeur d'Alene Tribe*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438; *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank*, 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999); *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). Except for *Coeur d'Alene Tribe*, the new cases are plainly not applicable to MCHS's suit. *Seminole Tribe* limits *Young* exceptions where Congress has provided a detailed remedial scheme; no one suggests that such a scheme exists under the Medicaid statute. *Alden* concerns suits in state courts. *Flor-*

---

sury, an assumption that MCHS denies. Pl.'s Reply at 4. The analysis of the Eleventh Amendment here is based on the defendants' own assumption.

**2.** Defendants cite the Sixth Circuit's decision that an order to pay desegregation costs was not ancillary to a non-compensatory interest. *Kelley v. Metropolitan County Bd. Ed.*, 836 F.2d 986 (6th Cir.1987). The Fourth Circuit's decision in *Rehabilitation Association* postdates *Kelley* and the Supreme Court cases on ancillary expenses on which defendants rely. The *Rehabilitation Association* court evidently did not find the request to order increased state Medicaid payments to be impermissibly direct in its impact on the state treasury.

**3.** In addition, the Fourth Circuit has more recently found a *Young* exception for relief that would bar collection of an assessed tax, despite its obvious negative impact on the state treasury. *CSX Transp., Inc. v. Board of Pub. Works of W. Va.*, 138 F.3d 537 (4th Cir.1998). The *CSX* decision barred collec-

tion of revenue rather than ordering what is arguably expense, placing it further from the case at bar than is *Rehabilitation Association*.

**4.** Other circuits have permitted cases to proceed under *Young* exceptions despite enormous prospective effects on state treasuries. *See, e.g., Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1095 (9th Cir.1999)(finding a *Young* exception for a challenge to Medicaid reimbursement rates); *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280 (10th Cir.1999)(permitting a suit under federal acts including the Medicaid Act). *Cf. Armstrong v. Wilson*, 124 F.3d 1019, 1026 (9th Cir. 1997)("No court ... has carved out an exception to *Ex parte Young* on the basis of the complexity and scope of the prospective injunctive relief sought. To the contrary, many courts have permitted suits to proceed under *Young* where plaintiffs sought comprehensive relief....").

*ida Prepaid,* and *Kimel* concern congressional power to abrogate the Eleventh Amendment or to force a state waiver, neither of which is at issue here.

*Coeur d'Alene Tribe* limits the availability of a *Young* exception where "special sovereignty interests" are at issue. 521 U.S. at 281, 117 S.Ct. 2028. Without speculating generally as to what might constitute a special sovereignty interest, the Court found that states have a special sovereignty interest in "navigable waters," 521 U.S. at 284, 117 S.Ct. 2028, or "sovereign control over submerged lands," 521 U.S. at 282, 117 S.Ct. 2028, or "jurisdictional control over important public lands." 521 U.S. at 283, 117 S.Ct. 2028. The basis for Idaho's special interest in Lake Coeur d'Alene includes ancient doctrines and English common law governing navigable waters, 521 U.S. at 284, 117 S.Ct. 2028, as well as the constitutional status of each state's sovereignty over the lands with which it entered the Union, 521 U.S. at 283, 117 S.Ct. 2028. In its only subsequent comment on this aspect of *Coeur d'Alene Tribe,* the Court cited "long-standing precedent" in refusing to bar *in rem* admiralty actions against property that states claimed. *California v. Deep Sea Research, Inc.,* 523 U.S. 491, 506–07, 118 S.Ct. 1464, 140 L.Ed.2d 626 (1998). The *Deep Sea Research* Court refused to speculate on analogous cases. *Id.*

The defendants contend that "the state's ... interest in appropriating its own funds" is a special sovereignty interest under *Coeur d'Alene Tribe.* Defs' Opp. at 8. In support, they cite a Sixth Circuit case that preceded *Coeur d'Alene Tribe* itself by ten years, and argue that the state would have to change its budget, requiring a new budget appropriation, if its current payment system is invalidated. Defs.' Opp. at 8–9.

The Fourth Circuit has not defined "special sovereignty interests" under *Coeur d'Alene Tribe. Cf. Litman v. George Mason Univ.,* 186 F.3d 544 (4th Cir.1999)(citing *Coeur d'Alene Tribe* in discussing a waiver question); *Smith v. Cromer,* 159 F.3d 875 (4th Cir.1998)(citing *Coeur d'Alene Tribe* in discussing the Eleventh Amendment as a quasi-jurisdictional bar); *Republic of Paraguay v. Allen,* 134 F.3d 622 (4th Cir.1998)(citing *Coeur d'Alene Tribe* in refusing to find a *Young* exception where a violation was neither prospective nor ongoing).

Other circuits have refused to find "special sovereignty interests" even in land-use suits, regardless of prospective effects on a state treasury.[5] The Eleventh Circuit held that a state's direct financial interest in "profits under [a] recreational land lease" was not a special sovereignty interest. *Elephant Butte Irrigation Dist. v. Department of Interior,* 160 F.3d 602, 612 (11th Cir.1998). The Tenth Circuit has refused to apply the *Coeur d'Alene Tribe* doctrine to "limited aspects of how the state may manage ... public lands." *Branson Sch. Dist. v. Romer,* 161 F.3d 619, 623 (10th Cir.1998). *See also Mille Lacs Band of Chippewa Indians v. Minnesota,* 124 F.3d 904, 914 (8th Cir.1997)(rejecting a special sovereignty defense against a tribal claim to hunting, fishing, and gathering rights).

Even after *Coeur d'Alene Tribe,* several circuits have found *Young* exceptions for cases challenging state management of federally funded welfare programs despite serious potential effects on the state trea-

---

5. Of the three published circuit cases that have found special sovereignty interests barring a *Young* exception under *Coeur d'Alene Tribe,* two are land-use issues. *Ysleta Del Sur Pueblo v. Laney,* 199 F.3d 281, 290 (5th Cir.2000)(finding that a tribe had "not sufficiently distinguished" its own case from a quiet title action); *MacDonald v. Village of Northport,* 164 F.3d 964, 972 (6th Cir.1999)(finding that a challenge to public use of a right of way that provided public access to a navigable waterway implicated special sovereignty interests). The third case relied on a congressional finding of special sovereignty interests. *ANR Pipeline Co. v. Lafaver,* 150 F.3d 1178, 1193 (10th Cir.1998)("Congress has made it clear in no uncertain terms that a state has a special and fundamental interest in its tax collection system.... [I]t is impossible to imagine that a state government could continue to exist without the power to tax.").

sury. The Eleventh Circuit recently noted that a suit against a state for failure to reimburse health care providers under past Medicaid law had met the *Young* requirements, without mentioning a *Coeur d'Alene Tribe* problem. *Florida Ass'n of Rehabilitation Facilities v. Florida Dep't of Health & Rehabilitative Servs.*, 225 F.3d 1208, 1218–19 (11th Cir.) The Seventh Circuit has found "no important sovereignty interests" in "a suit ... seeking to enforce compliance with the federal program under which [the state] ha[s] accepted funds." *Marie O. v. Edgar*, 131 F.3d 610, 617 & n. 13 (7th Cir.1997)(permitting a *Young*-based suit for provision of early intervention services required under the Individuals with Disabilities Education Act). The Tenth Circuit similarly has found that a "state's interest in administering a welfare program at least partially funded by the federal government is not such a core sovereign interest as to preclude the application of *Ex parte Young*." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1287 (10th Cir.1999). The Ninth and Eleventh Circuits have permitted Medicaid suits that would increase state expenses. *Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1095 (9th Cir.1999)(finding a *Young* exception for a challenge to Medicaid reimbursement rates); *Doe v. Chiles*, 136 F.3d 709, 719–20 (11th Cir.1998)(permitting a *Young* action for "reasonable promptness" under the Medicaid Act). *See also Johnson v. Guhl*, 91 F.Supp.2d 754, 771–72 (D.N.J.2000)("[G]ranting Plaintiffs prospective injunctive relief would likely require the State to spend more from the state treasury than if it were left to continue its current course of conduct. Such an effect would, however, be ancillary...."). The weight of authority beyond our circuit makes it plain that the state's interest in administering the Medicaid program is not a special sovereignty interest under *Coeur d'Alene Tribe*.

The Fourth Circuit has not spoken again on *Rehabilitation Association*'s treatment of the Eleventh Amendment issue. Nor, indeed, has any other circuit criticized this aspect of the decision. MCHS seeks prospective and injunctive relief, directed to an alleged ongoing violation of federal law; any additional prospective expense required by compliance with federal law would be ancillary. In the absence of Fourth Circuit analysis of *Coeur d'Alene Tribe*, this Court declines to expand that case's holding to bar suits seeking relief with a substantial prospective impact on the state treasury. The Eleventh Amendment does not bar MCHS's claim.

### III.

■ In the typical Medicaid case brought by health-care providers, the injury to the providers is plainthey say they should be paid more money. *See, e.g., Maryland Psychiatric Soc'y v. Wasserman*, 102 F.3d 717 (4th Cir.1996); *Cabell Huntington Hosp., Inc. v. Shalala*, 101 F.3d 984 (4th Cir.1996). MCHS asks the Court to require the state to pay its member FQHCs, not more, but differently. The precise change sought, and by extension the precise injury suffered, are not clear from the pleadings. In its Amended Complaint, MCHS requests the Court to "order defendants immediately to pay plaintiff's FQHC partners directly .... without deducting that [sum] from MCO capitations and without requiring those FQHCs first to apply for such reimbursement." Am. Compl. at 20. MCHS argues that in the Balanced Budget Act of 1997, "Congress statutorily *required* the transfer of responsibility for payment of FQHC reasonable costs from the MCOs to the States." Pl.'s Opp. at 7 (emphasis in original).

In its Reply, however, MCHS argues that the state could satisfy the law by deducting supplemental funds due to FQHCs from the funds otherwise available to all MCOs.[6] Pl.'s Reply at 4. MCHS

---

**6.** Administrative regulations that are not yet effective would implement such a solution for the calendar year 2001, for which the Maryland legislature ordered the creation of "a supplemental pool to pay the FQHCs by ad-

justing total HealthChoice funds," the funds available to all MCOs. Defs.' Opp. at 11 n.2. MCHS has advised the Court by letter of October 2, 2000, of several potential problems

objects only when the state deducts the supplemental funds exclusively from the MCO under contract to the FQHC that originally requested the funds. *Id.* Some percentage of the payments to a given FQHC may then come from the MCO affiliated with that FQHC. Apparently the amount, not the fact, of deduction from the affiliated MCO is illegal under MCHS's theory.

Whether it complains of the fact or the amount of deduction from the affiliated MCO, MCHS complains of a harm suffered primarily by another organization, not by itself or its members. "[T]he MCO pays the difference," but MCHS, which is not an MCO, argues that the state should pay instead. Am. Compl. ¶ 39. The defendants admit that an MCO such as Priority Partners loses money from its state payments when FQHCs affiliated with it choose to request the supplemental funds to which they are entitled. Defs.' Opp. at 3. As a shareholder of Priority Partners, MCHS suffers financially when Priority Partners loses this money; Maryland's payment system is sub-optimal, to say the least, for any FQHC, and particularly for any FQHCs that have formed their own MCO. But MCHS implicitly concedes that its constituent FQHCs, when they request it, receive the full supplemental funds to which they are entitled by federal law. Pl.'s Reply at 4. Any harm to MCHS from the state's payment system is a harm to its pocketbook in its capacity as a 50% share-holder of Priority Partners. Likewise, any harm to a FQHC partner in MCHS from the state's payment system exists only because the FQHC owns an interest in Priority Partners. The loss to MCHS and its members is thus derivative of the loss to Priority Partners.

"It is considered a "fundamental rule" that "[a] shareholder even the sole share-holder-does not have standing to assert claims alleging wrongs to the corporation."" *Smith Setzer & Sons, Inc. v. South Carolina Procurement Review Panel,* 20 F.3d 1311 (4th Cir.1994) (citation omitted)(applying North Carolina law). Maryland corporate law, which governs the question of shareholder standing, *Kamen v. Kemper Financial Servs.,* 500 U.S. 90, 98–99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991), follows this rule. *O'Donnell v. Sardegna,* 336 Md. 18, 28, 646 A.2d 398 (1994). Maryland's payment system clearly harms Priority Partners. How it harms MCHS or its members except as shareholders of Priority Partners is harder to see.[7] MCHS and its members FQHCs have not shown a direct injury in fact.[8] *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 557, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).[9]

MCHS argues that Congress has encouraged FQHCs to form their own MCOs, and that the Catch–22 in which Maryland's payment system places MCHS's members frustrates the legislative purpose. Am. Compl. ¶¶ 22–23. Con-

with these regulations; it has not argued that a sufficient pool of money for FQHC payments, drawn from all MCOs, would violate the Balanced Budget Act.

7. The Court recognizes that a congressional amendment affecting cases seeking higher reimbursement rates under the Medicaid statute may affect Priority Partners's ability to challenge the state's alleged violations. *See, e.g., Children's Hosp. & Health Ctr. v. Belshe,* 188 F.3d 1090, 1094 (9th Cir.1999).

8. Courts differ on whether the issue analyzed here should be classified as a question of the real party in interest, shareholder standing, or simply standing. *See* 13 Charles Alan Wright et al., *Federal Practice & Procedure* § 3531 (2d ed.1984). Following the Fourth Circuit's ap-

proach in *Smith Setzer & Sons, Inc. v. South Carolina Procurement Review Panel,* 20 F.3d 1311, this Court uses the shareholder standing framework.

9. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,* 204 F.3d 149 (4th Cir. 2000)(en banc), and *Friends of the Earth, Inc. v. Laidlaw Environmental Services,* 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), concerned the Clean Water Act, in which Congress had expressed its plain intent to broaden standing as far as possible. MCHS does not argue directly that the question of injury in fact in the case at bar is illuminated by the *Laidlaw* Court's and the Fourth Circuit's holdings that thwarted use of polluted waters constitutes injury in fact.

gress has provided loan guarantees so that FHQCs may form their own MCOs. 42 U.S.C.A. § 254b(d) (West Supp.1999). Maryland's payment system plainly hurts any MCO that contracts with any FQHC. The system very well may frustrate Congress's purpose in encouraging FQHCs to form MCOs and more generally in supporting FQHCs financially. Nevertheless, the hurt is to the MCO, affecting MCHS as a shareholder. MCHS's claim to be paid from a different source fails for lack of standing.

MCHS further argues in a letter of September 21, 2000, that the "State's use of a portion of the capitation payment from the MCOs to pay FQHCs their costs poses a disincentive for MCOs to contract with Maryland FQHCs," and that "[t]o the extent that *any* MCO is deterred from entering into contracts with MCHS' FQHC members, the ability of FQHCs to secure the costs to which they are entitled, as well as their competitive standing, is detrimentally affected" (emphasis in original). MCHS has presented no evidence that any of its member FQHCs have been dropped by their MCOs, or that any MCO has been "deterred from entering into contracts with MCHS' FQHC members." The existence of such a disincentive, however unwise as a matter of policy, cannot establish injury in fact without some showing of harm not resulting from decisions made by MCHS's own members.[10]

 The other aspect of MCHS's surviving claim, whether Maryland's payment of the supplemental funds is "automatic" or not, narrowly survives the standing inquiry. If MCHS reads the merits correctly, the state's methodology subjects MCHS's member FQHCs to more regulation than federal law permits. The D.C. Circuit has held that standing existed where plaintiffs claim to be "materially harmed by the additional regulatory burden imposed on them" as a result of un-

lawful action. *Association of Am. R.R. v. Dep't of Transp.,* 38 F.3d 582, 586 (D.C.Cir.1994). For seeking automatic payment, MCHS has standing.

### IV.

 The defendants challenged the existence of a cause of action under § 1983 with respect to three counts of the plaintiff's Amended Complaint, all now dismissed. The defendants have not challenged the existence of a cause of action with respect to the surviving count, and accordingly the Court will not address the matter. Whether a statute creates a cause of action is not a jurisdictional question. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 88–93, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

### V.

All parties have moved for summary judgment on the merits. The remaining disputes are questions of law. Defs.' Opp. at 3 n.1. No party disputes the facts of how Maryland's payment system works and there are no other genuine disputes of material fact.

 By federal law, states must provide certain services in their state Medicaid plans, 42 U.S.C. § 1396a(a)(10)(A), including the services of federally qualified health centers to the poor, 42 U.S.C. § 1396d(a)(2)(C). "A State must provide for payment" for medical assistance of a certain percentage of the costs of services rendered, and "in the case of services furnished by a Federally-qualified health center ... for payment to the center or clinic at least quarterly by the State of a supplemental payment" that would ensure the same percentage reimbursement of their reasonable costs. 42 U.S.C. § 1396a(a)(13)(C). (The percentage is currently set to decline steadily from fiscal year 2000 through fiscal year 2003. *Id.*) Maryland provided for payment under the statute by requiring the FQHC to request

---

10. A state administrative proceeding by an MCO to challenge the state's withholding of funds does not constitute injury in fact to the FQHC involved, which received its payment. The necessity of responding to lawful discovery requests does not constitute injury in fact either.

payment. Md.Code Ann. Health–Gen. § 15–103(e)(3). MCHS argues that this approach has "turned the supplemental payment requirements of the [Balanced Budget Act] into an optional program which States need to implement only if the FQHC makes a request." Pl.'s Opp. at 12. The defendants argue, *inter alia,* that Maryland has to know how much to pay the FQHCs before it can pay supplemental funds.

Nothing in the text of the statute or in its legislative history bars Maryland's method of determining how much to pay the FQHCs. The statute requires the state to "provide ... for payment to the center or clinic at least quarterly by the State of a supplemental payment...." 42 U.S.C. § 1396a(a)(13)(C). The legislative history says "[s]tates would be required to make supplemental payments to the FQHCs.... Such payments would be equal to the difference between the contracted amount and the cost-based amount." H. Rep. No. 105–217, at 869 (1997), *reprinted in* 1997 U.S.C.C.A.N. 176, 490. Neither suggests that the state may not tell the FQHCs to tell it how much to pay them. Moreover, the defendants' point that the state must know how much to pay is logical. Maryland's payment method puts FQHCs in an uncomfortable political position in that it requires them to request funds that will be taken from their MCO. The key to their discomfort, however, lies in the withdrawal of funds from the MCO, a problem that must be raised by the MCO, as discussed above.

For these reasons, the Court will grant the defendants' Motion to Dismiss as to the plaintiff's request for an injunction governing the source of payment of supplemental funds to FQHCs. The Court will grant the defendants' Motion for Summary Judgment as to the plaintiff's request for an injunction requiring automatic payment of supplemental funds.